# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | | |
|---|---|---|
| NORTHSTAR AVIATION, LLC, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Case No. 1:18-cv-191 |
| | ) | |
| ALDEN BURT ALBERTO, *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

At issue in this diversity action is defendants' Motions to Dismiss the Amended Complaint. The matter has been fully briefed and argued and is now ripe for disposition.

This action arises out of (i) defendant Alden Alberto's ("Alberto") payment of allegedly unauthorized bonuses to himself and to co-conspirators over the course of four years, (ii) Alberto's allegedly false communications to plaintiffs' business contacts, and (iii) Alberto's allegedly unauthorized withdrawal of significant sums of money from plaintiffs' bank accounts. Plaintiffs allege that defendant Alberto took all of these actions in an attempt to destroy plaintiffs' business and to start a competing company, Vulcan Aviation LLC ("Vulcan Aviation"). Based on these actions, plaintiffs assert eight claims against individual defendant Alberto, including: breach of fiduciary duty, common law and statutory conspiracy, fraud, tortious interference with business relationships, defamation, conversion, and unjust enrichment. Plaintiffs also assert one claim of Virginia statutory conspiracy against corporate defendant Vulcan Aviation. Defendants have now moved to dismissed each of these claims, arguing that plaintiffs have failed to state claims upon which relief may be granted and that some portions of each claim are time-barred.

1

# I.[1]

Plaintiff NorthStar Aviation USA LLC ("NorthStar USA") is a limited liability company organized and existing under the laws of Delaware with its principal place of business in Florida. NorthStar USA's sole member is plaintiff NorthStar Aviation LLC ("NorthStar UAE"), which is a limited liability company organized under the laws of the United Arab Emirates with its principal place of business in the UAE. NorthStar UAE's two members are Rotana Jet Aviation LLC and Dr. Ahmed Bin Saif ("Dr. Bin Saif"). Dr. Bin Saif serves as Chairman of the Board of Directors for NorthStar UAE ("NorthStar Board"). Plaintiffs NorthStar USA and NorthStar UAE (collectively "NorthStar") are in the business of manufacturing and selling helicopters and providing aircraft maintenance, repair, and pilot training.

Defendant Alberto, a resident of Virginia, is the former Chief Executive Officer ("CEO") of NorthStar USA and CEO and Managing Director of NorthStar UAE. Defendant Alberto worked for NorthStar USA from the company's offices in McLean, Virginia. Defendant Vulcan Aviation is a Virginia limited liability company also in the business of selling helicopters and providing maintenance, repair, and pilot training services. The Amended Complaint alleges that Vulcan Aviation's members include Alberto, Terry Key ("Key"), and Hillary Holcombe ("Holcombe").[2] Key and Holcombe were also former employees of NorthStar USA who worked from McLean, Virginia.

The Amended Complaint alleges that in 2011, NorthStar UAE's members entered into a Memorandum of Association and formed NorthStar UAE. The Memorandum of Association

---

[1] The facts recited here are taken chiefly from the Amended Complaint's factual allegations, which must be accepted as true at this stage. *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (noting that at the motion to dismiss stage, "we must accept plaintiffs' factual allegations as true").

[2] The Amended Complaint originally named Key and Holcombe as defendants in addition to Alberto and Vulcan Aviation. Subsequently, on May 3, 2018, Key and Holcombe were dismissed from the action when the parties entered into a joint stipulation of dismissal as to these defendants.

named Alberto as Managing Director of NorthStar UAE and provided that Alberto would be at all times responsible to, and subject to the control of, NorthStar UAE's Board of Directors ("NorthStar Board"). *See* NorthStar Mem. of Association ¶¶ 9.8, 9.10. The Memorandum of Association also gave Alberto the power to carry out the day-to-day management of the company's affairs, including the power to enter into agreements on behalf of the company, to draw and issue checks on behalf of the company, and to fix the salaries of employees on behalf of the company. *See id.* ¶¶ 9.8, 9.9.

The next year, in May 2012, NorthStar USA was incorporated in Delaware, and Alberto was named CEO of both NorthStar UAE and NorthStar USA. And in 2013, Northstar UAE granted Alberto Power of Attorney over NorthStar UAE. Alberto's Power of Attorney again authorized Alberto to conduct the day-to-day management on behalf of the company, including entering into agreements, drawing and issuing checks, and fixing the salaries of employees. *See* NorthStar Power of Attorney ¶¶ (a), (e), (n).

The Amended Complaint alleges that from May 2012 through October 2017, Alberto improperly used his authority as CEO to direct NorthStar's Finance Director to transfer funds and issue checks from NorthStar's accounts to cover "improper, unmerited, and unauthorized bonus payments" to Alberto, Key, and Holcombe in total amounts of $19,307,399, $1,990,000, and $220,000, respectively. The Amended Complaint alleges that Alberto knew that he did not have the authority to issue these bonus payments without approval from the NorthStar Board but that Alberto nonetheless failed to seek such approval.

The Amended Complaint alleges that by 2016, NorthStar was experiencing significant financial difficulties. Despite Alberto's awareness of these financial difficulties, the Amended Complaint alleges that Alberto continued to pay improper bonuses to himself, Key, and

Holcombe and that Alberto concealed these bonuses from Dr. Bin Saif. For example, the Amended Complaint alleges that Alberto disclosed to Dr. Bin Saif that company-wide bonus payments in November 2016 totaled $3,678,970, but that Alberto did not disclose to Dr. Bin Saif that Alberto, Key, and Holcombe received nearly 75 percent of this amount.

The Amended Complaint further alleges that in the summer of 2017, Dr. Bin Saif explicitly directed Alberto to find ways to reduce NorthStar's expenses. The Amended Complaint also alleges that despite these instructions, Alberto paid himself approximately $10 million in bonuses in late June and early October 2017 and authorized additional bonuses for Key and Holcombe. Around the same time, the Amended Complaint alleges that Alberto laid off ten of the forty-six people working for NorthStar, targeting the highest-paid corporate and operations employees as well as those employees who had questioned NorthStar's finances.

The Amended Complaint further alleges that around this time, Alberto, Key, and Holcombe began planning to launch a new company named Vulcan Aviation to compete with NorthStar. The Amended Complaint alleges that, as part of this plan, Alberto attempted to transfer NorthStar's equipment from a hanger in the UAE to a hanger in Florida for use by Vulcan Aviation.

On October 17, 2017, Alberto attended a meeting of the NorthStar Board. At this meeting, the NorthStar Board indicated that they intended to audit NorthStar's finances. Two days later, on October 19, 2017, NorthStar UAE revoked Alberto's Power of Attorney, and on the same day, Alberto registered Vulcan Aviation with the Virginia State Corporation Commission. The Amended Complaint alleges that around this same time Alberto, Key, and Holcombe also (i) began informing NorthStar USA's vendors that NorthStar USA was renaming itself as Vulcan Aviation and (ii) began contacting NorthStar USA employees to lure them to

Vulcan Aviation.[3] Key, it is alleged, also contacted a representative of Kuwait, with whom NorthStar had been discussing the potential for a new contract, and ordered the Kuwaiti representative to withdraw any plans concerning NorthStar's potential sale of helicopters to Kuwait. And the Amended Complaint further alleges that Alberto attempted to transfer NorthStar USA's International Traffic in Arms Regulation ("ITAR") export license to Vulcan Aviation. The Amended Complaint alleges that after Alberto's attempts to transfer the license were unsuccessful, Alberto requested that the U.S. State Department rescind NorthStar USA's ITAR licenses. Alberto also drafted a letter to the UAE Armed Forces, a client of NorthStar's, informing the UAE Armed Forces that NorthStar's services under their contract would terminate on October 25, 2017.

That same day, on October 25, 2017, Alberto resigned from NorthStar. After resigning, the Amended Complaint alleges that Alberto continued to access NorthStar USA's bank accounts, and from October 26, 2017 through October 31, 2017, Alberto transferred and withdrew more than $664,000 from NorthStar USA's bank accounts, leaving the accounts with a negative balance. Alberto also used his NorthStar USA credit card to make purchases for his new company, Vulcan Aviation, including charging payments to attorneys and a graphic designer.

Plaintiffs filed the Amended Complaint in this diversity action on April 13, 2018, asserting eight claims against four defendants, Alberto, Key, Holcombe, and Vulcan Aviation. On May 3, 2018, the parties entered into a stipulation of dismissal, dismissing the claims against Key and Holcombe. As such, the remaining claims in plaintiffs' Amended Complaint include: (i) breach of fiduciary duty against Alberto, (ii) common law conspiracy against Alberto, (iii)

---

[3] For example, on October 21, 2017, Holcombe contacted a graphic designer hired to design a brochure for NorthStar and advised the designer that NorthStar would be changing its name and closing out its account.

fraud against Alberto, (iv) statutory conspiracy against Alberto and Vulcan Aviation, (v) tortious interference with business expectancy against Alberto, (vi) conversion against Alberto, (vii) defamation against Alberto, and (viii) unjust enrichment against Alberto.

Defendants filed the Motion to Dismiss at issue here on April 27, 2018, arguing that each of plaintiffs' claims should be dismissed. Specifically, defendants argue as a threshold matter that portions of plaintiffs' fraud, fiduciary duty, conversion, and unjust enrichment claims are time-barred. Defendants also argue that the Amended Complaint cannot survive threshold dismissal because it is unclear from the Amended Complaint which law governs plaintiffs' claims. Finally, defendants contend that plaintiffs have failed to state claims for relief sufficient to survive threshold dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiffs oppose each of these arguments, contending (i) that the continuing violations doctrine saves the portions of their claims that would otherwise be time-barred, (ii) that the Amended Complaint makes clear that Virginia law applies, and (iii) that they have adequately alleged the necessary elements of each of their claims.

## II.

The standard on a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., is too well-settled to warrant extensive elaboration. Put simply, a court may dismiss a claim if, after accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.

As a threshold matter, it is necessary to address defendants' choice-of-law and statute-of-limitations concerns. With respect to choice of law, it is undisputed that a court sitting in

diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). And it is also undisputed that in determining which law governs a tort action, the Supreme Court of Virginia "adhere[s] to the *lex loci delicti*, or place of the wrong, standard … ." *Jones v. R. S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993). In this regard, Virginia law defines "the place of the wrong" as "the place where the last event necessary to make an actor liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (internal quotation marks and citations omitted).

Plaintiffs assert in their opposition that the injuries occurred in Virginia where Alberto worked and where NorthStar USA's offices were located, and both parties apply Virginia law for the purposes of this motion. Accordingly, although a more complete record at summary judgment might require the application of a different state's laws, the facts alleged in the Amended Complaint are sufficient to warrant the application of Virginia law at this stage.

With respect to the statute of limitations, it is well-settled (i) that the applicable limitations period for claims of breach of fiduciary duty is two years,[4] (ii) that the applicable limitations period for claims of fraud is two years,[5] (iii) that the applicable limitations period for claims of conversion is five years,[6] and (iv) that the applicable limitations period for unjust enrichment is three years.[7] Accordingly, any conduct occurring prior to the following dates cannot be the basis for plaintiffs' claims:

---

[4] Va. Code §§ 8.01–230, 8.01–248; *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995).

[5] Va. Code Ann. §§ 8.01–243, 8.01–249; *Va. Imports, Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691, 699 (E.D. Va.2003).

[6] Va. Code §§ 8.01-243B; *Federal Ins. Co. v. Smith*, 63 F. App'x 630, 637 (4th Cir. 2003).

[7] Plaintiffs attempt to argue that the applicable statute of limitations for unjust enrichment is five years, but this argument is unfounded. Indeed, even the case upon which plaintiffs chiefly rely, *East West LLC v. Rahman*, 873 F. Supp. 2d 721 (E.D. Va. 2012), rejects plaintiffs' argument. In *East West*, the court noted that "[i]n Virginia, the statute of limitations for an unjust enrichment claim is three years" and rejected East West's argument that a five-year limitations period applied to unjust enrichment claims. *Id.* at 730.

- Count I – Breach of Fiduciary Duty: All claims before February 20, 2016 are time-barred.

- Count III – Fraud: All claims before February 20, 2016 are time-barred.

- Count VI – Conversion: All claims before February 20, 2013 are time-barred.

- Count VIII – Unjust Enrichment: All claims before February 20, 2015 are time-barred.

In an effort to avoid this straightforward conclusion, plaintiffs argue that the conduct occurring before the relevant limitations period is part of a continuing violation. But plaintiffs have not identified any Virginia authority supporting the application of the continuing violation doctrine to the common law torts at issue here.[8] And the Fourth Circuit has affirmed a decision in which a district court in the Western District of Virginia declined to extend the continuing violation doctrine to the common law tort sphere. *Hurst v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 4974786, at *3 (W.D. Va. 2008), *aff'd*, 324 F. App'x 250 (4th Cir. 2009) ("The continuing violation doctrine was specifically addressed in the context of the plaintiff's claims and the applicable statute of limitations, and the court held that the doctrine would not apply to the plaintiff's claims for fraud."). Thus, it is inappropriate here to extend Virginia law to apply a continuing violations doctrine and save the untimely conduct that plaintiffs allege in the Amended Complaint. *See Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016) (declining to "expand South Carolina law by recognizing a cause of action for aiding and abetting common

---

In an attempt to avoid this conclusion, plaintiffs attempt to characterize their unjust enrichment claim as based on defendants' conversion and thus subject to a five-year statute of limitations. But again, the court in *East West* made clear that the "limitations period applicable to oral contracts applies to *all* unjust enrichment claims because in bringing such a claim, the plaintiff asks the court to imply a contract in law, which is 'necessarily unwritten.'" *Id.* (emphasis added). Thus the law is clear that plaintiffs cannot circumvent statutes of limitations by artfully characterizing their unjust enrichment claims as based in tort, not contract.

[8] Plaintiff cites to *Commmonwealth ex rel. Fair Hous'g Bd. v. Windsor Plaza Condo. Ass'n*, 768 S.E.2d 79, 94 (Va. 2014), but there the Supreme Court of Virginia recognized the application of this continuing violations doctrine in the civil rights and housing discrimination context. Plaintiff cites only one Virginia Circuit Court case in support of the application of continuing violation to common law torts, *Stickley v. Stickley*, but upon closer review, that case appears not to concern a statute of limitations or the continuing violation doctrine at all. 43 Va. Cir. 123, 147 (1997).

law fraud"); *Thousand Oaks Barrel Co. v. Deep S. Barrels, LLC*, 241 F. Supp. 3d 708, 724-25 (E.D. Va. 2017) (declining to recognize new claim under Virginia law).

**IV.**

Given that the relevant limitations period for each claim has been established, it is appropriate now to consider defendants' arguments in favor of dismissal of each claim. Ultimately, plaintiffs' breach of fiduciary duty, conversion, defamation, and unjust enrichment claims survive. Plaintiffs' conspiracy, fraud, and tortious interference with business expectancy claims must be dismissed, but with leave to amend if plaintiffs can do so consistently with the strictures of Rule 11, Fed. R. Civ. P.

**A.**

Plaintiffs' breach of fiduciary duty claim survives threshold dismissal. To state a claim for breach of fiduciary duty under Virginia law, a plaintiff must allege "(1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011). Plaintiffs here have stated a claim for breach of fiduciary duty against defendant Alberto. The Amended Complaint alleges that defendant Alberto owed a fiduciary duty to NorthStar based on his role as CEO, Managing Director, and attorney-in-fact and that this fiduciary duty was expressly contained in defendant Alberto's employment agreement. Am. Compl. ¶¶ 4, 18, 20, 24. The Amended Complaint further alleges that defendant Alberto breached the fiduciary duties he owed to NorthStar (i) when Alberto misappropriated funds from NorthStar by paying himself excessive bonuses and making cash withdrawals, (ii) when Alberto worked to sabotage and undermine NorthStar's business by attempting to transfer Northstar's equipment and ITAR license, (iii) when Alberto worked to sabotage NorthStar's potential business relationships by withdrawing business

proposals, and (iv) when Alberto withdrew funds from NorthStar's bank accounts for his own personal expenditures and those of a competing company. *See id.* ¶ 118. And finally, the Amended Complaint alleges that plaintiffs suffered damages, in excess of $20 million, as a result of these breaches. As such, the Amended Complaint adequately alleges a claim of breach of fiduciary duty.

Defendants argue that plaintiffs' breach of fiduciary duty claim must fail because the Memorandum of Association and Power of Attorney authorized Alberto to pay himself these bonuses and Alberto was simply exercising his business judgment in doing so. But this argument fails because although the Memorandum of Association and the Power of Attorney gave Alberto broad authority to transact business on behalf of NorthStar, these documents did not explicitly authorize Alberto to make the specific bonus payments at issue. And importantly, the Memorandum of Association makes clear that despite his broad power, Alberto was at all times responsible to, and subject to the control of, the NorthStar Board. *See* NorthStar Mem. of Association ¶ 9.10. Accordingly, the Amended Complaint's allegations that Alberto's actions were unauthorized and that Alberto continued to funnel money into his own pocket despite the fact that the Chairman instructed Alberto to save money are sufficient to satisfy plaintiffs' burden at this stage and on this record.

**B.**

Plaintiffs' statutory and common law conspiracy claims against both corporate defendant Vulcan Aviation and Alberto must be dismissed, but with leave to amend if plaintiffs can do so consistently with the strictures of Rule 11, Fed. R. Civ. P. It is well-settled that both statutory conspiracy and common law conspiracy under Virginia law require an agreement between two or more parties. *See* Va. Code §§ 18.2-499, 18.2-500; *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703

(E.D. Va. 2007). In this regard, Virginia law makes clear that because a corporation and its agents are essentially one actor, "a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir. 1986). As such, it is legally impossible for Vulcan Aviation to have conspired with its members—Alberto, Key, and Holcombe—and hence plaintiffs' conspiracy claim against Vulcan Aviation must be dismissed.[9]

Plaintiffs argue that the conspiracy claim against Alberto can nonetheless survive because the Amended Complaint alleges that Alberto, Key, and Holcombe engaged in acts in furtherance of the conspiracy before Vulcan Aviation was formed in October 2017 Although the Amended Complaint does allege that Alberto, Key, and Holcombe began converting funds from NorthStar before Vulcan Aviation was incorporated, the conspiracy claim against Alberto must fail because the Supreme Court of Virginia has recognized the principle that a claim for civil conspiracy "cannot be maintained in a suit involving a single defendant where the same underlying torts are also asserted by separate counts against the same defendant[.]" *Gelber v. Glock*, 293 Va. 497, 535 (2017) (quoting *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 803–04 (D. Utah 1988)). That is precisely the case here; the Amended Complaint asserts all of the underlying tort claims against Alberto, the single remaining individual defendant in the action. As such, a claim of civil conspiracy is neither a necessary, nor a proper mechanism, for imputing liability to Alberto.

---

[9] Plaintiffs argue that personal stake exception to the doctrine of intracorporate immunity applies here. The Fourth Circuit has made clear that an exception to the general doctrine of intracorporate immunity "may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." *Greenville Pub. Co. v. Daily Reflector, Inc*., 496 F.2d 391, 399 (4th Cir. 1974). But the Amended Complaint does not allege any independent personal stake of Alberto in the conspiracy beyond Alberto's relationship with Vulcan Aviation. Indeed, the Amended Complaint alleges that Alberto sought to destroy NorthStar by bleeding it dry in order to support the creation of the competing company, Vulcan Aviation.

## C.

Plaintiffs' fraud claim does not survive threshold dismissal. Rule 9(b), Fed. R. Civ. P., provides that where, as here, a plaintiff asserts a claim of fraud, the plaintiff "must state with particularity the circumstances constituting the fraud[.]" In this respect, if the plaintiff alleges that defendants committed fraud via affirmative misrepresentations, the Fourth Circuit has required plaintiffs to state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009). The only possible affirmative misrepresentation alleged in the Amended Complaint is that "Alberto covered up the [bonus] payments in discussions with Dr. Bin Saif." Am. Compl. ¶ 48. But this allegation fails to satisfy Rule 9(b)'s heightened pleading requirements because it does not identify the "time, place, and content" of Alberto's attempts to cover up the bonus payments. As such, this allegation cannot support plaintiffs' fraud claim.

Nor is plaintiffs' fraud claim saved by the other allegations in the Amended Complaint, which focus on Alberto's concealment of the breakdown of bonuses.[10] Importantly, although it is undisputed that a plaintiff can state a fraud claim through concealment of a material fact, where there is no duty to disclose a piece of information, silence alone does not constitute concealment. *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994). In this regard, Virginia law makes clear (i) that there is no duty to disclose information that is already in a plaintiff's

---

[10] *See, e.g.*, Am. Compl. ¶ 51 ("Alberto knowingly and intentionally concealed the source of the financial trouble: namely, the improper bonus payments to him and his co-conspirators."); *id.* ¶ 137 ("Alberto . . . intentionally . . . concealed from the Chairman on multiple occasions . . . the breakdown of bonuses paid to NorthStar employees and NorthStar's liquidity."); *id.* ¶ 138 ("As an additional example of this concealment, when reporting on the November 2016 bonuses, Alberto stated that the bonus payments totaled $3,678,970, purposefully concealing the fact that Alberto, Key, and Holcombe had pocketed $2,755,000 of that amount … .").

possession[11] and (ii) that corporate entities, like plaintiffs here, "have constructive knowledge of the contents of their records."[12]

Here the Amended Complaint does not adequately allege that defendant Alberto had a duty to disclose either the breakdown of bonuses or the source of NorthStar's financial trouble. Moreover, there are no allegations in the Amended Complaint that defendant Alberto took steps to conceal the breakdown of bonuses in the corporate records or that the breakdown was not available to plaintiffs. As such, the allegations of the Amended Complaint do not support a fraud claim based on concealment. Accordingly, because plaintiffs had the information alleged to have been fraudulently concealed in their possession, plaintiffs' fraud claim must be dismissed, but with leave to amend if plaintiffs can do so consistently with the strictures of Rule 11, Fed. R. Civ. P.

**D.**

Plaintiffs' claim for tortious interference with business expectancy does not survive. To state a claim of tortious interference with business expectancy under Virginia law, plaintiffs must allege

> (1) existence of a business relationship or expectancy with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that plaintiff would have continued in the relationship or realized the expectancy absent defendant's intentional misconduct; (4) interference by improper methods; and (5) damages resulting from that interference.

*Goulmamine v. CVS Pharmacy*, 138 F. Supp. 3d 652, 672 (E.D. Va. 2015). With respect to the third element, the Supreme Court of Virginia has made clear that "mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of

---

[11] *Connelly v. Gen. Med. Corp.*, 880 F. Supp. 1100, 1115 (E.D. Va 1995).

[12] *Helton v. AT&T Inc.*, 709 F.3d 343, 356 (4th Cir. 2013); *accord United States v. T. I. M. E.-D. C., Inc.*, 381 F. Supp. 730, 738 (W.D. Va. 1974).

13

action[;]" rather, the proof must establish a "probability" not a "possibility" of future economic benefit. *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301 (1997).

The Amended Complaint alleges that defendants tortiously interfered with plaintiffs' business expectancy with Kuwait, but it does not allege facts suggesting that the business expectancy at issue was reasonably certain. Specifically, the Amended Complaint alleges that Alberto and Key met with a representative of the Kuwaiti government on multiple occasions in 2017 to pitch aircraft sales to Kuwait and that in October 2017, Key contacted the representative and ordered him to withdraw plans concerning the potential sale. Am. Compl. ¶¶ 102-103. But the Amended Complaint contains no facts alleging that this "potential sale of helicopters" was a reasonably certain expectancy as required to state a claim for tortious interference with business expectancy. *Id.* ¶ 103.

The case plaintiffs cite to avoid this conclusion, *CaterCorp Inc. v. Catering Concepts, Inc., et al.*, 246 Va. 22 (1993), is of no help to plaintiffs as it is distinguishable. In *CaterCorp Inc.*, the tortious interference claim survived threshold dismissal because the complaint there alleged that the defendant interfered with existing contracts and relationships with existing customers. *Id.* at 27. Here, by contrast, there are no allegations that plaintiffs had entered into a contract with Kuwait nor that there was a reasonably certain likelihood that any such contract would go through. Accordingly, plaintiffs have failed to state a claim of tortious interference with business expectancy, and this claim must be dismissed, but with leave to amend if plaintiffs can do so consistently with the strictures of Rule 11, Fed. R. Civ. P.

### E.

Plaintiffs' conversion claim survives. To state a claim for conversion under Virginia law, a plaintiff must plead "(i) the ownership or right to possession of the property at the time of the

conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001). Under Virginia law, "money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund." *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, 2016 WL 740061, at *9 (E.D. Va. Feb. 25, 2016). A segregated or identifiable fund is "one separate from the defendant's general funds and one to which plaintiff is entitled." *Id.*

Defendants argue that plaintiffs' conversion claim fails because plaintiffs have not alleged that the funds defendants allegedly converted derived from a segregated or identifiable account. But this argument is unpersuasive because the Amended Complaint alleges that Alberto converted millions of dollars from plaintiffs' corporate bank accounts (i) by ordering subordinates to issue checks or transfer funds from the bank accounts, (ii) by transferring funds from plaintiffs' accounts to Alberto's personal bank accounts, and (iii) by withdrawing funds from plaintiffs' accounts. And courts have recognized that a complaint sufficiently states a conversion claim where, as here, the complaint alleges that a defendant converted money from a corporate bank account for personal use. *See Opports. Dev. Grp., LLC v. Andruss*, 2015 WL 2089841, at *9 (E.D. Va. Apr. 30, 2015) (holding that plaintiff adequately plead a claim of conversion where complaint alleged that defendants converted monies from plaintiff's business bank account for personal use).

## F.

Plaintiffs' defamation claim also survives threshold dismissal. To establish a claim for defamation under Virginia law, a plaintiff must show "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 575 (2005). To be

actionable, the plaintiff bears the burden of proving that the statement is "both false and defamatory." *Jordan*, 269 Va. at 575; *see also Gazette, Inc. v. Harris*, 229 Va. 1, 15 (1985). Even if all three elements of defamation are present, a defamation claim can still be defeated by a finding of privilege or immunity. *Gazette Inc.*, 229 Va. at 18. In this respect, the Fourth Circuit has made clear that government contractors are immune from defamation actions (i) where the allegedly defamatory statements are made by a "private party fulfilling its governmentally imposed duty to inform[,]"[13] and (ii) where the allegedly defamatory statements are "given by a government contractor and its employees *in response to queries* by government investigators engaged in an official investigation[.]"[14]

Plaintiffs have adequately alleged a claim for defamation. Specifically, the Amended Complaint alleges that on October 24, 2017, defendant wrote a letter to the U.S. State Department in which he stated that NorthStar would "no longer be in the business of manufacturing, exporting or brokering defense articles or defense services." Am. Compl. ¶ 182. According to the Amended Complaint, Alberto, the next day, wrote to the UAE Armed Forces falsely reporting that "all activities associated with [NorthStar's contract would] cease effective October 25, 2017." *Id.* ¶ 183. The Amended Complaint also alleges that these statements are false and that defendant knew the statements were false because defendant knew that NorthStar planned to remain in the business of manufacturing helicopters and to continue its activities associated with its UAE Armed Forces contract. *Id.* ¶ 185. And the Amended Complaint alleges that these statements had a defamatory sting inasmuch as the statements suggested that NorthStar was unfit to perform the contract and thus these statements prejudiced NorthStar in its business. *Id.* ¶ 188.

---

[13] *Becker v. Philco Corp.*, 372 F.2d 771, 776 (4th Cir. 1967).

[14] *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1449 (4th Cir. 1996).

Defendants argue that these statements cannot be the basis for a defamation claim because defendant Alberto was obligated to make the statements as part of his regulatory responsibilities. But the facts alleged in the Amended Complaint do not support a conclusion on this record that Alberto made these statements in response to a governmentally imposed duty to inform or in response to a query from an official government investigator. Defendants rely on ITAR regulations in support of their argument that Alberto was required to report these facts, but the regulations cited require ITAR registrants to report changes in ownership and control of subject entities or plans for sale of the entity, not changes in contracting plans or financial status. *See* 22 C.F.R. §§ 122.4(a)(2), 122.4(b). Accordingly, at this stage, it does not appear that defendant Alberto is entitled to immunity for his statements and threshold dismissal of plaintiff's defamation claim is not warranted.

## G.

Plaintiffs have also adequately stated a claim for unjust enrichment. Pursuant to Virginia law, a plaintiff asserting a claim of unjust enrichment must establish: "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Firestone*, 485 F. Supp. 2d at 704.

Defendants argue that plaintiffs have failed to state a claim for unjust enrichment because the Memorandum of Association and Power of Attorney authorized Alberto to pay himself the bonuses at issue and the Amended Complaint does not adequately allege that the bonuses were conferred under inequitable circumstances. But, as described above, the Memorandum of Association and the Power of Attorney gave Alberto general powers; these documents did not

explicitly authorize Alberto to pay the specific bonuses at issue in this action. And importantly, plaintiffs' unjust enrichment claim does not rely exclusively on Alberto's payment of bonuses to himself over three years. The Amended Complaint also alleges that Alberto drained NorthStar's bank accounts and misused NorthStar's credit cards and funds to pay Vulcan Aviation's bills. *See* Am. Compl. ¶¶ 70-71, 111-112, 173, 191, 194. Specifically, the Amended Complaint alleges that from October 26, 2017 to October 31, 2017, defendant Alberto transferred and withdrew more than $664,000.00 from NorthStar USA's accounts ($42,574.77 on October 26, 2017, $19,300.95 on October 31, 2017, and $602,425.00 on October 31, 2017). *Id.* ¶ 70. The Amended Complaint further alleges that defendant Alberto used the NorthStar credit card to pay attorneys and to hire a graphic designer to create a brochure for Vulcan Aviation. *Id.* ¶ 112. And there are no allegations in the Amended Complaint suggesting these withdrawals were in the regular course of business; indeed, defendant Albert resigned on October 25, 2017, several days before he made each of these withdrawals. *Id*. ¶¶ 70, 111. Accordingly, plaintiffs have adequately stated a claim for unjust enrichment.

An appropriate Order will issue.

Alexandria, Virginia
July 31, 2018

/s/
T. S. Ellis, III
United States District Judge