# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| NORTHSTAR AVIATION L.L.C., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C. A. No. 1:18cv191-TSE-JFA |
| | ) | |
| ALDEN BURT ALBERTO, | ) | |
| a/k/a Reno Alberto, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF NORTHSTAR AVIATION L.L.C.'S RESPONSES TO DEFENDANT ALDEN BURT ALBERTO'S FIRST INTERROGATORIES

Plaintiff NorthStar Aviation L.L.C. ("NorthStar UAE"), by counsel, hereby states the following responses to Defendant Alden Burt Alberto's First Interrogatories, as provided under Rules 26 and 33 of the Federal Rules of Civil Procedure and Rule 26 of the Local Civil Rules of the U.S. District Court for the Eastern District of Virginia.

### OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

A.  NorthStar UAE objects to Definition E ("NorthStar UAE," "you" or "your"), as used in Interrogatories 2-5, 7-9, 11-13, 15-18, and 20, to the extent it causes ambiguity and requests information in the possession of a "former" parent, subsidiary, department, division, subdivision, branch, affiliate, or other related company, or a "former" officer, director, agent, employee, consultant or representative thereof, as such information is outside of NorthStar UAE's control. NorthStar UAE also objects to Definition E to the extent it requests information from NorthStar UAE's attorneys that is protected by a lawful privilege. NorthStar UAE objects to Definition E as vague, ambiguous and overly broad to the extent it includes the undefined term, "other related compan[ies]," and as overbroad in the inclusion of "consultant[s]".

B.     NorthStar UAE objects to Definition F ("NorthStar USA"), as used in Interrogatories 10 and 17, to the extent it causes ambiguity and requests information in the possession of a "former" parent, subsidiary, department, division, subdivision, branch, affiliate, or other related company, or a "former" officer, director, agent, employee, consultant or representative thereof, as such information is outside of NorthStar UAE's control.  NorthStar UAE also objects to Definition E to the extent it requests information from NorthStar UAE's attorneys that is protected by a lawful privilege.  NorthStar UAE further objects to Definition F as vague, ambiguous and overbroad to the extent it includes the undefined term, "other related compan[ies]," and as overbroad in the inclusion of "consultant[s]".

C.     NorthStar UAE objects to Instruction No. 1 as exceeding the scope of the Federal Rules of Civil Procedure.

D.     NorthStar UAE objects to Instruction No. 5 as exceeding the scope of the Federal Rules of Civil Procedure.

E.     The parties have agreed to a general temporal limitation of February 20, 2013 to the present, except as to requests relating to initial capitalization and formation capital of NorthStar Aviation USA LLC ("NorthStar USA") and NorthStar UAE.  The responses below incorporate this limitation.

F.     NorthStar UAE retains the right to supplement its answers.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

1.    Identify each and every individual who may have personal knowledge as to the allegations and subject matter contained in the Complaint, and for each such individual, identify: (a) his or her name; (b) his or her present address, telephone number and/or email address; and (c) a summary description of such information known by each person.

> RESPONSE:   Without waiving its objections, Plaintiff states the following for its response.

- Mr. Alden "Reno" Alberto
  Vulcan Aviation, LLC
  (available through defense counsel)

  Subjects on which the witness may have knowledge or discoverable information: Mr. Alberto may have knowledge and/or discoverable information relating to: (1) his duties and responsibilities as CEO of NorthStar UAE and NorthStar USA; (2) his duties and responsibilities and NorthStar UAE's attorney-in-fact; (3) his duties and responsibilities as NorthStar USA's manager; (4) the determination of bonus payments and other compensation to NorthStar's employees during his tenure with NorthStar; (5) Terry Key's duties and responsibilities as NorthStar's senior vice president; (6) Hillary Holcombe's duties and responsibilities as NorthStar's chief marketing officer; (7) Nrasib Ali's duties and responsibilities as NorthStar's director of finance; (8) NorthStar's financial condition during Mr. Alberto's tenure with the company; (9) the reasons for improvements and/or declines in NorthStar's financial condition during Mr. Alberto's tenure with the company; (10) NorthStar's marketing efforts during Mr. Alberto's tenure with the company; (11) NorthStar's subsisting contracts during Mr. Alberto's tenure with the company; (12) Hani Farag's duties and responsibilities during Mr. Farag's employment with NorthStar; (13) Marwan Agha's duties and responsibilities during Mr. Agha's employment with NorthStar; (14) records generated and/or maintained by Mr. Alberto during his tenure with NorthStar; (15) Mr. Alberto's use of credit cards issued to him by NorthStar; (16) Mr. Alberto's access to NorthStar's bank accounts; (17) Mr. Alberto's communications with the United Arab Emirates Armed Forces during his tenure with NorthStar; (18) Mr. Alberto's communications with the U.S. State Department during his tenure with NorthStar; (19) Mr. Alberto's communications with NorthStar's board of directors during his tenure with NorthStar; (20) Mr. Alberto's preparation for NorthStar's board of directors meetings; (21) Mr. Alberto's distribution and/or use of NorthStar funds; (22) Mr. Alberto's communications with NorthStar's vendors, customers, prospective customers, employees and government agencies during and after his tenure with NorthStar; (23) Hillary Holcombe's communications with NorthStar's vendors, customers, prospective customers, employees and government agencies during and after her

tenure with NorthStar; (24) Terry Key's communications with NorthStar's vendors, customers, prospective customers, employees and government agencies during and after his tenure with NorthStar; (25) Mr. Alberto's bases and methods for determining bonuses paid to NorthStar employees during his tenure with NorthStar; (26) the sources of Mr. Alberto's knowledge or information relating to NorthStar's finances and/or the finances of individual members of NorthStar's board of directors; (27) Mr. Alberto's communications with Terry Key during and after Mr. Alberto's tenure with NorthStar relating to the acts alleged in the Amended Complaint; (28) Mr. Alberto's communications with Hillary Holcombe during and after Mr. Alberto's tenure with NorthStar relating to the acts alleged in the Amended Complaint; (29) Mr. Alberto's communications with Nrasib Ali during and after Mr. Alberto's tenure with NorthStar relating to the acts alleged in the Amended Complaint; (30) contracts entered into during Mr. Alberto's tenure wherein NorthStar UAE and/or NorthStar USA is a party; (31) Mr. Alberto's staffing decisions for NorthStar; (32) auditing of NorthStar's financial records; (33) the bases for facts alleged in Mr. Alberto's Answer to the Amended Complaint and Counterclaims; (34) the bases for Mr. Alberto's denials of facts alleged in the Amended Complaint; (35) Mr. Alberto's responses to discovery requests served on him in this lawsuit; (36) information learned or obtained by Mr. Alberto during the course of discovery in this litigation; (37) the formation of Vulcan Aviation, LLC ("Vulcan"); (38) Vulcan's members and managers; (39) Vulcan's initial capitalization; (40) Vulcan's business profile, business model, and business plan; (41) Vulcan's management; (42) Vulcan's employees, vendors, and customers; (43) Vulcan's principal place of business and place(s) of operations; (44) Vulcan's marketing and advertising; and (45) Mr. Alberto's communications with Hal Shapiro in connection with Mr. Alberto's employment agreement with NorthStar and/or NorthStar's governing documents.

- Mr. Terry P. Key
  2263 New Haven Avenue, Apt. 139
  Melbourne, Florida 32904

Subjects on which the witness may have knowledge or discoverable information: Mr. Key may have knowledge and/or discoverable information relating to: (1) his duties and responsibilities as NorthStar's senior vice president; (2) defendant Alden Alberto's duties and responsibilities as CEO of NorthStar UAE and NorthStar USA; (3) Mr. Alberto's duties and responsibilities as NorthStar UAE's attorney-in-fact; (4) Mr. Alberto's duties and responsibilities as NorthStar USA's manager; (5) the determination of bonus payments and other compensation to NorthStar's employees during his tenure with NorthStar; (6) Hillary Holcombe's duties and responsibilities as NorthStar's chief marketing officer; (7) Nrasib Ali's duties and responsibilities as NorthStar's director of finance; (8) NorthStar's financial condition during Mr. Alberto's tenure with the company; (9) the reasons for improvements and/or declines in NorthStar's financial condition during Mr. Key's tenure with the company; (10) NorthStar's marketing efforts during Mr. Key's tenure with the company; (11) NorthStar's subsisting contracts during Mr. Key's

tenure with the company; (12) Hani Farag's duties and responsibilities during Mr. Farag's employment with NorthStar; (13) Marwan Agha's duties and responsibilities during Mr. Agha's employment with NorthStar; (14) records generated and/or maintained by Mr. Key during his tenure with NorthStar; (15) Mr. Alberto's use of credit cards issued to him by NorthStar; (16) Mr. Alberto's access to NorthStar's bank accounts; (17) Mr. Key's access to NorthStar's bank accounts; (18) Mr. Key's communications with the UAEAF during his tenure with NorthStar; (19) Mr. Alberto's communications with the U.S. State Department during his tenure with NorthStar; (20) Mr. Key's communications with NorthStar's vendors, customers, prospective customers, employees and/or government agencies during or after his tenure with NorthStar; (21) the bases and methods for determining bonuses paid to NorthStar employees during Mr. Key's tenure with NorthStar; (22) the sources of Mr. Key's knowledge or information relating to NorthStar's finances and/or the finances of individual members of NorthStar's board of directors; (23) Mr. Key's communications with Mr. Alberto during and after Mr. Key's tenure with NorthStar relating to the acts alleged in the Amended Complaint; (24) Mr. Key's communications with Hillary Holcombe during and after Mr. Key's tenure with NorthStar relating to the acts alleged in the Amended Complaint; (25) Mr. Key's communications with Nrasib Ali during and after Mr. Key's tenure with NorthStar relating to the acts alleged in the Amended Complaint; (26) Mr. Alberto's preparation for NorthStar's board of director meetings; (27) contracts entered into during Mr. Key's tenure wherein NorthStar UAE and/or NorthStar USA is a party; (28) staffing decisions for NorthStar; (29) the formation of Vulcan; (30) Vulcan's members and managers; (31) Vulcan's initial capitalization; (32) Vulcan's business profile, business model, and business plan; (33) Vulcan's management; (34) Vulcan's employees, vendors, and customers; (35) Vulcan's principal place of business and place(s) of operations; and (36) Vulcan's marketing and advertising.

- Ms. Hillary R. Holcombe
  74 Irving Place, Apt. 3A
  New York, New York 10003
  (last available address)

Subjects on which the witness may have knowledge or discoverable information: Ms. Holcombe may have knowledge and/or discoverable information relating to: (1) her duties and responsibilities as NorthStar's chief marketing officer; (2) defendant Alden Alberto's duties and responsibilities as CEO of NorthStar UAE and NorthStar USA; (3) Mr. Alberto's duties and responsibilities as NorthStar UAE's attorney-in-fact; (4) Mr. Alberto's duties and responsibilities as NorthStar USA's manager; (5) NorthStar's financial condition during Ms. Holcombe's tenure with the company; (6) the reasons for improvements and/or declines in NorthStar's financial condition during Ms. Holcombe's tenure with the company; (7) NorthStar's marketing efforts during Ms. Holcombe's tenure with the company; (8) NorthStar's subsisting contracts during Ms. Holcombe's tenure with the company; (9) Hani Farag's duties and responsibilities during Mr. Farag's employment with NorthStar; (10) Marwan Agha's duties and responsibilities during Mr. Agha's

employment with NorthStar; (11) records generated and/or maintained by Ms. Holcombe during her tenure with NorthStar; (12) Ms. Holcombe's and/or Mr. Alberto's use of credit cards issued by NorthStar; (13) Mr. Alberto's access to NorthStar's bank accounts; (14) Ms. Holcombe's and/or Mr. Alberto's communications with the United Arab Emirates Armed Forces during his tenure with NorthStar; (15) Ms. Holcombe's and/or Mr. Alberto's travel in their respective roles as NorthStar's officers; (16) communications with the U.S. State Department during Ms. Holcombe's tenure with NorthStar; (17) Ms. Holcombe's communications with NorthStar's vendors, customers, prospective customers, employees and/or government agencies during or after her tenure with NorthStar; (18) the bases and methods for determining bonuses paid to NorthStar employees during Ms. Holcombe's tenure with NorthStar; (19) Ms. Holcombe's communications with Mr. Alberto during and after her tenure with NorthStar relating to the acts alleged in the Amended Complaint; (20) Ms. Holcombe's communications with Terry Key during and after her tenure with NorthStar relating to the acts alleged in the Amended Complaint; (21) Mr. Alberto's preparation for NorthStar's board of director meetings; (22) the formation of Vulcan; (23) Vulcan's members and managers; (24) Vulcan's initial capitalization; (25) Vulcan's business profile, business model, and business plan; (26) Vulcan's management; (27) Vulcan's employees, vendors, and customers; (28) Vulcan's principal place of business and place(s) of operations; (29) Vulcan's marketing and advertising; and (30) Mr. Alberto's communications with Hal Shapiro in connection with Mr. Alberto's employment agreement with NorthStar and/or NorthStar's governing documents.

- Mr. Hichem Bendida

  Subjects on which the witness may have knowledge or discoverable information: Mr. Bendida may have knowledge and/or discoverable information relating to: (1) NorthStar's marketing of its goods and services to Kuwait; (2) Mr. Alberto's and/or Mr. Key's instruction(s) to terminate NorthStar's marketing to Kuwait; (3) the scope and nature of the sales NorthStar proposed to Kuwait; and (4) Mr. Alberto's and/or Mr. Key's communications with Mr. Bendida during their respective tenures at NorthStar.

- Mr. Hani Farag
  3625 Jean Gascon
  VSL, Quebec H4R 0K6
  Canada
  (514) 826-0626

  Subjects on which the witness may have knowledge or discoverable information: Mr. Farag may have knowledge and/or discoverable information relating to: (1) the process implemented for approving employee bonuses and compliance with that process; (2) Mr. Farag's expression of concerns about possible financial improprieties at NorthStar; (3) Mr. Alberto's interactions with other NorthStar

employees; (4) the grounds for Mr. Farag's termination from NorthStar; (5) Mr. Farag's communications with Mr. Alberto and/or Mr. Key during his tenure with NorthStar; (6) Mr. Farag's duties and responsibilities while employed by NorthStar; (7) senior management bonuses; (8) Alberto's refusal to sign statements Mr. Farag requested in connection with bonuses paid to Alberto; (9) Alberto's refusal to provide information regarding bonus payments made to Alberto or senior-level employees; (10) Alberto's comments on the performance of NorthStar's Chairman's businesses; (11) the disbursement of payments from the UAEAF to NorthStar; (12) Alberto's beliefs about the existence of a Performance Bond agreement; (13) the terms of Alberto's Employment Agreement with NorthStar USA; (14) reports prepared by PricewaterhouseCoopers regarding Alberto's annual income tax returns, which were used by Alberto to request tax equalization payments from NorthStar; (15) Hillary Holcombe's performance as an employee; (16) Alberto's relationship with Hillary Holcombe; and (17) Terry Key's and other employees' concerns about Alberto's relationship with Hillary Holcombe.

- Mr. Marwan Agha
  6 Hamlet
  DDO, Quebec H9G 2L4
  Canada
  (514) 570-2316

  Subjects on which the witness may have knowledge or discoverable information: Mr. Agha may have knowledge and/or discoverable information relating to: (1) Mr. Agha's expression of concerns about possible financial improprieties at NorthStar; (2) the grounds for Mr. Agha's termination from NorthStar; (3) Mr. Agha's communications with Mr. Alberto and/or Mr. Key during his tenure with NorthStar; (4) Mr. Agha's duties and responsibilities while employed by NorthStar; (5) Mr. Alberto's interactions with other NorthStar employees; (6) Alberto's expense reports and Alberto's inappropriate use of NorthStar's credit and debit cards for personal expenses; (7) signature authority on NorthStar UAE and NorthStar USA bank accounts; (8) the terms of Alberto's Employment Agreement with NorthStar USA; (9) reports prepared by PricewaterhouseCoopers regarding Alberto's annual income tax returns, which were used by Alberto to request tax equalization payments from NorthStar; (10) Alberto's refusal to sign statements Mr. Farag requested in connection with bonuses paid to Alberto; (11) Alberto's refusal to provide information regarding bonus payments made to Alberto or senior-level employees; (12) Hillary Holcombe's performance as an employee; (13) Alberto's relationship with Hillary Holcombe; and (14) NorthStar employees' concerns about Alberto's relationship with Hillary Holcombe.

- Mr. Lyle Becka
  NorthStar Aviation USA LLC
  (to be contacted through plaintiffs' counsel)

7

Subjects on which the witness may have knowledge or discoverable information: Mr. Becka may have knowledge and/or discoverable information relating to: (1) the facts alleged in NorthStar's Amended Complaint; (2) the exhibits supporting the Amended Complaint; (3) NorthStar's damages sustained as a result of the defendants' acts alleged in the Amended Complaint; (4) NorthStar's efforts to recover from the damages inflicted on it by the defendants and their co-conspirators; and (5) the facts alleged in Alberto's Answer and Counterclaims.

- Dr. Ahmed bin Saif bin Mohamed Al Nahyan
  (to be contacted through plaintiffs' counsel)

Subjects on which the witness may have knowledge or discoverable information: Dr. bin Saif may have knowledge and/or discoverable information relating to: (1) the facts alleged in NorthStar's Amended Complaint; (2) the exhibits supporting the Amended Complaint; (3) NorthStar's damages sustained as a result of the defendants' acts alleged in the Amended Complaint; (4) NorthStar's efforts to recover from the damages inflicted on it by the defendants and their co-conspirators; and (5) the facts alleged in Alberto's Answer and Counterclaims.

- Mr. Nrasib Ali
  (to be contacted through plaintiffs' counsel)

Subjects on which the witness may have knowledge or discoverable information: Mr. Ali may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto and Mr. Key during Mr. Ali's tenure with NorthStar; (2) Mr. Alberto's directions for Mr. Ali to pay bonuses to certain NorthStar employees; (3) Mr. Ali's payment of bonuses to NorthStar employees; (4) any and all criteria, policies, guidelines, and/or standards Mr. Ali followed in paying bonuses to NorthStar employees; and (5) records generated and/or maintained by Mr. Ali during his tenure with NorthStar.

- Ms. Amy Styers
  (to be contacted through plaintiffs' counsel)

Subjects on which the witness may have knowledge or discoverable information: Ms. Styers may have knowledge and/or discoverable information relating to: (1) her communications with Mr. Alberto and Mr. Key during Ms. Styer's tenure with NorthStar; (2) Mr. Alberto's attempts to transfer and later revoke NorthStar USA's ITAR license; (3) Mr. Alberto's and Mr. Key's preparations to launch Vulcan; (4) Mr. Alberto's and Mr. Key's communications with NorthStar USA employees concerning the status of NorthStar UAE and NorthStar USA; and (5) records generated and/or maintained by Ms. Styers during her tenure with NorthStar.

- Greg Huber
  (to be contacted through plaintiffs' counsel)

Subjects on which the witness may have knowledge or discoverable information: Mr. Huber may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto and/or Mr. Key during Mr. Huber's tenure with NorthStar; (2) Mr. Alberto's and/or Mr. Key's preparations to launch Vulcan; (3) Mr. Alberto's and Mr. Key's communications with NorthStar USA employees concerning the status of NorthStar UAE and NorthStar USA; and (4) records generated and/or maintained by Mr. Huber during his tenure with NorthStar.

- Stefan Orlygsson
  (to be contacted through plaintiffs' counsel)

  Subjects on which the witness may have knowledge or discoverable information: Mr. Orlygsson may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto and/or Mr. Key during Mr. Orlygsson's tenure with NorthStar; (2) Mr. Alberto's and/or Mr. Key's preparations to launch Vulcan; (3) Mr. Alberto's and/or Mr. Key's communications with NorthStar USA employees concerning the status of NorthStar UAE and NorthStar USA; and (4) records generated and/or maintained by Mr. Orlygsson during his tenure with NorthStar.

- Robert Howard
  (to be contacted through plaintiffs' counsel)

  Subjects on which the witness may have knowledge or discoverable information: Mr. Howard may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto and/or Mr. Key during Mr. Howard's tenure with NorthStar; (2) Mr. Alberto's and/or Mr. Key's preparations to launch Vulcan; (3) Mr. Alberto's and/or Mr. Key's communications with NorthStar USA employees concerning the status of NorthStar UAE and NorthStar USA; and (4) records generated and/or maintained by Mr. Howard during his tenure with NorthStar.

- Richard Liddle
  (to be contacted through plaintiffs' counsel)

  Subjects on which the witness may have knowledge or discoverable information: Mr. Liddle may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto and/or Mr. Key during Mr. Liddle's tenure with NorthStar; (2) Mr. Alberto's and/or Mr. Key's preparations to launch Vulcan; (3) Mr. Alberto's and/or Mr. Key's communications with NorthStar USA employees concerning the status of NorthStar UAE and NorthStar USA; and (4) records generated and/or maintained by Mr. Liddle during his tenure with NorthStar.

- Salem AlDhaheri
  (to be contacted through plaintiffs' counsel)

Subjects on which the witness may have knowledge or discoverable information: Mr. AlDhaheri may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto and/or Mr. Key during Mr. AlDhaheri's tenure with NorthStar; (2) his communications with Dr. Bin Saif concerning NorthStar; and (3) records generated and/or maintained by Mr. AlDhaheri during his tenure with NorthStar.

- Hal S. Shapiro, Esq.
  Akin Gump Strauss Hauer & Feld LLP
  1333 New Hampshire Avenue, N.W.
  Washington, D.C. 20036
  (202) 887-4053

Subjects on which the witness may have knowledge or discoverable information: Mr. Shapiro may have knowledge and/or discoverable information relating to: (1) his communications with Mr. Alberto concerning NorthStar; and (2) records generated and/or maintained by Mr. Shapiro during his time as counsel for NorthStar.

- Magda Talkhan
  (to be contacted through plaintiffs' counsel)

Subjects on which the witness may have knowledge or discoverable information: Ms. Talkhan may have knowledge and/or discoverable information relating to: (1) her communications with Mr. Alberto and/or Mr. Key during Ms. Talkhan's tenure with NorthStar; (2) her communications with Dr. Bin Saif concerning NorthStar; and (3) records generated and/or maintained by Ms. Talkhan during her tenure with NorthStar.

- Mohammed Jallad
  Abu Dhabi Global Market Square
  Abud Dhabi
  United Arab Emirates
  990
  +971 (0) 2 408 2424

Subjects on which the witness may have knowledge or discoverable information: Mr. Jallad may have knowledge and/or discoverable information relating to: (1) Deloitte's auditing of NorthStar's financial records; (2) his communications with NorthStar employees, including Mr. Alberto and/or Mr. Ali, concerning Deloitte's auditing of NorthStar's financial records; and (3) records generated and/or maintained by Mr. Jallad as a result of Deloitte's auditing of NorthStar's financial records.

2. Describe in detail the formation and governance structure of NorthStar UAE, including identification of all current NorthStar UAE subsidiaries, affiliated companies, owners, members, shareholders, directors, managers, and corporate executives, as well as explaining the relationship between NorthStar UAE and Rotana Jet and identifying any applicable operating agreement or similar agreement between the two entities.

> OBJECTION(S): NorthStar further objects to the multi-part character of this Interrogatory, which comprises at least three interrogatories in the guise of one.

> RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

> NorthStar Aviation L.L.C. ("NorthStar UAE") was formed as a limited liability company in Abu Dhabi with commercial license number CN-1341341 issued by the Department of Economic Development in Abu Dhabi. NorthStar UAE's principal place of business is located in Abu Dhabi, United Arab Emirates ("UAE"). NorthStar UAE has two shareholders: Dr. bin Saif, a UAE national, and Rotana Jet Aviation LLC, a limited liability company incorporated in Abu Dhabi holding commercial license number CN-1239076 issued by the Department of Economic Development in Abu Dhabi. Rotana Jet Aviation LLC's sole member is Dr. bin Saif.

> NorthStar UAE executed a Memorandum of Association dated December 6, 2011. *See* NSA000380-399. NorthStar UAE then executed an Agreement to Amend the Memorandum of Association, which was recorded on March 25, 2013. Pursuant to the Memorandum of Association, NorthStar UAE is controlled by a Board of Directors. *See* NSA000105-120. Dr. bin Saif is the Chairman of the Board of Directors for NorthStar UAE. The 2013 Amendment appointed Alberto as the initial Managing Director of NorthStar UAE to manage day to day affairs for NorthStar UAE. Lyle Becka currently serves as the Vice President of Operations for NorthStar UAE. Salem AlDhaheri currently serves as the Senior Vice President, Corporate for NorthStar UAE.

> NorthStar UAE is the sole Member of NorthStar USA; it has no other subsidiaries or affiliates.

3. State in detail and non-conclusory language all facts and identify all documents concerning or relating to the revocation of Mr. Alberto's Power of Attorney as alleged in Paragraph 68 of your Complaint, including the specific reason(s) for revoking the Power of Attorney, who

participated in that decision, when that decision was made, and what impact such revocation had

on Mr. Alberto's ability to continue to act on behalf of NorthStar UAE.

OBJECTION(S): NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. Additionally, NorthStar objects to the multi-part character of this Interrogatory, which comprises at least four interrogatories in the guise of one. Furthermore, the interrogatory's request for NorthStar to "identify all documents" is in the nature of a request for production of documents and is therefore improper as an interrogatory.

RESPONSE: Without waiving its objections, Plaintiff states the following for its response

The Power of Attorney, attached as Exhibit C to the Amended Complaint (NSA000402-407), granted Defendant Alberto certain powers as agent for NorthStar UAE. The Revocation of Power of Attorney, dated October 19, 2017, has been produced as NSA000508-509. Dr. bin Saif executed the Revocation of Power of Attorney after the meeting of the Board of Directors of NorthStar UAE on October 17, 2017, due to Defendant Alberto's refusal to provide full and satisfactory answers to Dr. bin Saif's questions regarding NorthStar's finances.

Dr. bin Saif had started to lose confidence and trust in Defendant Alberto in the summer of 2017 after discovering the state of NorthStar's finances. Dr. bin Saif advised Defendant Alberto at this time that Defendant Alberto needed to reduce NorthStar's expenses until Defendant Alberto secured new business. However, despite the grave financial status of NorthStar, Defendant Alberto authorized over $11,520,000.00 in additional, unauthorized bonuses to himself and his co-conspirators, Hillary Holcombe, Terry Key, and Nrasib Ali ($9,540,000 of which he distributed to himself) between June and October of 2017.

In a Notice dated October 8, 2017, Dr. bin Saif notified Defendant Alberto of an upcoming Board of Directors meeting to occur on October 17, 2017. *See* NSA000138. The topics to be discussed at the meeting included: 1) audited financial statements for the year 2016 and before; 2) decisions made that were not in accordance with NorthStar UAE's Memorandum of Association; 3) bonus payments made to company executives; 4) amounts paid to the Chairman; 5) the company's financial position, including unaudited profit and loss statements and balance sheets up to September 30, 2017; 6) company strategy for the coming years; and 7) any other relevant matters. The auditors from Deloitte & Touche Incorporated who had audited NorthStar's finances were requested to attend. At the October 2017 board meeting, Defendant Alberto further eroded Dr. bin Saif's confidence and trust by a lack of candor at the meeting. Thus, Dr. bin Saif revoked the Power of Attorney on October 19, 2017, primarily to ensure that Defendant Alberto no longer had the ability to manage the NorthStar UAE bank accounts. A copy of the Revocation of Power of Attorney was presented to NorthStar UAE's

bank in the UAE as a matter of record to remove Defendant Alberto's signature authority and replace it with that of Dr. bin Saif.

See also NorthStar UAE's responses to Request for Production No. 33.

4. State in detail and non-conclusory language all facts and identify all documents concerning or relating to the granting of Mr. Alberto's Power of Attorney, including the specific reason(s) for granting this authority, who participated in this decision, when that decision was made, and what if any limitations you contend were provided under the Power of Attorney in terms of Mr. Alberto's ability to act on behalf of NorthStar UAE.

> OBJECTION(S): NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. Additionally, NorthStar objects to the multi-part character of this Interrogatory, which comprises at least four interrogatories in the guise of one. Furthermore, the interrogatory's request for NorthStar to "identify all documents" is in the nature of a request for production of documents and is therefore improper as an interrogatory.

> RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

> The Power of Attorney, attached as Exhibit C to the Amended Complaint, was recorded on March 25, 2013, as part of the formation process of NorthStar UAE. The Power of Attorney was issued as a matter of standard UAE business practice, namely to address the fact that, in the UAE, if authorization to act on behalf of a business is not presented in writing, other entities may refuse to recognize an individual's authorization to act on behalf of that business. The purpose of the Power of Attorney was not to shift all governance and control of NorthStar UAE to Defendant Alberto. Instead, the members of NorthStar UAE, namely, Dr. bin Saif, individually and as the representative of Rotana Jet LLC, authorized and issued the Power of Attorney to Defendant Alberto with the sole intent to provide Defendant Alberto with sufficient authority to manage the day to day business of NorthStar UAE.

> In regard to its terms and limitations, the Power of Attorney speaks for itself. See also NorthStar UAE's responses to Request for Production No. 33.

5. Itemize all compensation of [*sic*] any form, including salary, bonuses, distributions, and draws paid to each owner, member, shareholder, director, manager, or executive of NorthStar

UAE from January 2013 to the present, including the dates and amounts of each payment and the reason for each payment, specifically including the following individuals:

a) Dr. Ahmed;

b) Alden Burt Alberto;

c) Lyle Becka;

d) Nrasib Ali;

e) Hani Farag; and

f) Marwan Agha.

OBJECTION(S): NorthStar further objects to the multi-part character of this Interrogatory, which comprises at least six interrogatories in the guise of one.

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

Dr. bin Saif received distributions from NorthStar USA and NorthStar UAE pursuant to his rights as one of the two members of NorthStar UAE (NorthStar USA's parent company). These distributions included a $4,540,000 distribution on June 29, 2017.

Defendant Alberto improperly used his power as CEO to pay to himself at least $19,307,399 in unauthorized bonuses between 2013 and 2017. Pursuant to Defendant Alberto's Employment Agreement dated May 31, 2012, attached as Exhibit B to the Amended Complaint, Defendant Alberto was entitled to a $750,000 annual base salary with $250,000 in deferred compensation. Defendant Alberto was also entitled to tax equalization assistance as set forth in the Employment Agreement. Pursuant to the Engagement Agreement, Defendant Alberto was permitted an annual travel allowance of 10% of his base salary, an annual housing allowance not to exceed $125,000 (AED 460,000.00), and an annual vehicle allowance of $40,000 (AED 146,600.00).

In 2013, Defendant Alberto's monthly salary from NorthStar USA was paid as follows:
  o January 29, 2013:      $128,390.00
  o February 26, 2013:     $201,140.00
  o March 21, 2013:        $185,438.92
  o March 27, 2013:        $106,224.00, additional tax equalization payment
  o April 22, 2013:        $185,438.92
  o May 20, 2013:          $185,438.92

14

- o   June 20, 2013:        $185,438.92
- o   July 22, 2013:        $185,438.92
- o   August 20, 2013:      $185,438.92
- o   September 20, 2013:   $185,438.92
- o   October 20, 2013:     Paid by NorthStar UAE
- o   November 20, 2013:    $185,439.00
- o   December 20, 2013:    $370,877.85

Defendant Alberto directed payment of three unauthorized bonuses to himself in 2013: (1) January 8, 2013 – $250,000, (2) January 9, 2013 – $550,000, (3) June 28, 2013 – $1,000,000; August 29, 2013 - $1,500,000. *See* NSA000577-594.

In 2014, Defendant Alberto's monthly salary from NorthStar USA was paid as follows:
- o   January 23, 2014:     $194,913.14
- o   February 20, 2014:    $185,438.92
- o   March 20, 2014:       $185,438.92
- o   April 18, 2014:       $185,438.92
- o   April 15, 2014:       $90,006.00 additional tax equalization payment
- o   April 23, 2014:       $65,043.10 additional tax equalization payment
- o   May 20, 2014:         $185,438.92
- o   June 20, 2014:        $185,438.92
- o   July 22, 2014:        $314,214.25, includes $74,754.08 tax equalization payment
- o   August 20, 2014:      $491,677.42
- o   September 16, 2018:   $189,606.48 tax equalization payment
- o   September 17, 2014:   $205,826.56
- o   October 17, 2014:     $205,826.56
- o   November 19, 2014:    $205,826.56
- o   December 18, 2014:    $205,826.56

Defendant Alberto directed payment of two unauthorized bonuses to himself in 2014: (1) $1,200,000 on January 29, 2014, and (2) $1,400,000 on July 23, 2014. *See* NSA000558-576.

In 2015, Defendant Alberto's monthly salary from NorthStar USA was paid as follows:
- o   January 21, 2015:     $216,154.70
- o   February 18, 2015:    $205,826.56
- o   March 18, 2015:       $205,826.56
- o   April 17, 2015:       $205,826.50
- o   May 18, 2015:         $205,826.56
- o   June 18, 2015:        $205,826.56
- o   July 16, 2015:        $205,826.56
- o   August 18, 2015:      $205,826.56
- o   September 18, 2015:   $205,826.56
- o   October 20, 2015:     $205,826.56
- o   November 18, 2015:    $205,826.56
- o   December 17, 2015:    $205,826.56

Defendant Alberto directed payment of one unauthorized bonus to himself in 2015 of $1,567,399.62 on December 10, 2015. *See* NSA000543-557.

In 2016, Defendant Alberto's monthly salary from NorthStar USA was paid as follows:
- January 15, 2016: $216,154.70
- February 17, 2016: $205,826.56
- March 16, 2016: $189,476.48
- April 15, 2016: $189,476.48
- May 12, 2016: $189,476.48
- June 14, 2016: $189,476.48
- July 14, 2016: $189,476.48
- August 12, 2016: $189,476.48
- September 14, 2016: $189,476.48
- October 13, 2016: $189,476.47
- November 14, 2016: $189,476.47
- December 14, 2016: $189,476.47

Defendant Alberto directed payment of one unauthorized bonus to himself in 2016 of $2,300,000 on November 28, 2016. *See* NSA000528-542.

In 2017, Defendant Alberto's monthly salary from NorthStar USA was paid as follows:
- January 12, 2017: $201,038.28
- February 14, 2017: $195,325.14
- March 14, 2017: $195,325.14
- April 13, 2017: $195,325.14
- May 12, 2017: $195,325.14
- June 14, 2017: $195,325.14
- July 13, 2017: $195,325.14
- August 14, 2017: $176,804.92
- September 14, 2017: $176,804.91
- October 13, 2017: $176,804.91

Defendant Alberto directed payment of two unauthorized bonuses to himself in 2017: (1) $4,540,000 on July 5, 2017, and (2) $5,000,000 on October 2, 2017. Defendant Alberto took these bonuses, despite being informed by Dr. bin Saif that NorthStar USA needed to decrease expenses. *See* NSA000417-427; NSA000498-507; NSA000514-527.

As of June 2017, while employed by NorthStar, Lyle Becka earned a gross monthly salary of 71,825 AED (approximately $19,624.00), which included a basic salary of 68,625 AED, and a vehicle allowance of 3,200 AED.

As of June 2017, Nrasib Ali was receiving a gross monthly salary of 84,408 AED (approximately $23,062.00), which included a basic salary of 56,425 AED, a housing allowance of 20,833 AED, a vehicle allowance of 3,200 AED, and a travel allowance of 3,950 AED. Nrasib Ali also received seven (7) bonuses in exchange for his cooperation with Defendant Alberto in Defendant Alberto's scheme. These bonuses include: $50,000 on August 26, 2013; $85,000 on January 28, 2014; $100,000 on December 8, 2014;

$110,000 on December 10, 2015; $165,000 on November 27, 2016; $170,000 on June 29, 2017; and $300,000 on October 4, 2017.

As of June 2017, Hani Farag was receiving a gross monthly salary of 109,332 AED (approximately $29,872.00), which included a basic salary of 70,150 AED, a housing allowance of 26,667 AED, a vehicle allowance of 5,500 AED, and a travel allowance of 7,015 AED.

As of June 2017, Marwen Agha received a gross monthly salary of 55,606 AED (approximately $15,193), which included a basic salary of 35,228 AED, a housing allowance of 15,417 AED, a vehicle allowance of 3,200 AED, and a travel allowance of 1,761 AED.

As of June 2017, Terry Key was receiving a gross monthly salary of 124,429 AED (approximately $33,997.00), which included a basic salary of 83,875 AED, a housing allowance of 26,667 AED, a vehicle allowance of 5,500 AED, and a travel allowance of 8,388 AED. Mr. Key also received seven (7) bonuses in exchange for his cooperation with Defendant Alberto in Defendant Alberto's scheme, which include: $150,000 on August 26, 2013; $150,000 on January 28, 2014; $250,000 on December 8, 2014; $265,000 on December 10, 2015; $325,000 on November 27, 2016; $500,000 on June 29, 2017; and $350,000 on October 4, 2017. *See* NSA000684.

As of June 2017, Salem AlDhaheri was receiving a gross monthly salary of 95,912 AED (approximately $26,205.00), which included a basic salary of 57,950 AED, a housing allowance of 26,667 AED, a vehicle allowance of 5,500 AED, and a travel allowance of 5,795 AED.

6.    State in detail and non-conclusory language the tasks and duties undertaken by Dr.

Ahmed in securing and/or performing under the UAE Contract.

OBJECTION(S):  NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. Additionally, NorthStar objects that this Interrogatory is neither relevant nor proportional to the needs of the case, as it does not relate to any claim or defense in the lawsuit.  For this reason, too, the Interrogatory is overly broad and not reasonably calculated to lead to the discovery of admissible evidence.

RESPONSE:  Without waiving its objections, Plaintiff states the following for its response.

As a member of the UAE royal family, Dr. bin Saif's name carries significant influence in the UAE.  Without Dr. bin Saif's participation in NorthStar, it is unlikely that NorthStar would have secured the UAE Contract. Dr. bin Saif also corresponded with the client regarding NorthStar's performance under the

Contract. In addition, Dr bin Saif secured the funding for the formation of NorthStar UAE. Several of NorthStar's employees had worked for a previous company called Reflex Responses Management Consultancy, L.L.C. ("R2"). R2 was a limited liability company incorporated and subsisting in Abu Dhabi, UAE, that had funding provided by the UAE government. After a decision was made to liquidate R2, the remaining funds in the R2 accounts were authorized to be transferred to NorthStar by the UAE government after consultation with Dr bin Saif. The amount transferred was approximately $32,000,000.

7.      State in detail how much money, if any, Dr. Ahmed contributed in forming NorthStar UAE, including the dates and amounts of each payment, the specific purpose for each payment, if any, and identify any financial statements reflecting such payments.

> OBJECTION(S):  NorthStar further objects that this Interrogatory is neither relevant nor proportional to the needs of the case, as it does not relate to any claim or defense in the lawsuit. For this reason, too, the Interrogatory is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, NorthStar objects to the multi-part character of this Interrogatory, which states at least at least three interrogatories in the guise of one. Furthermore, the interrogatory's request for NorthStar to "identify any financial statements" is in the nature of a request for production of documents and is therefore improper as an interrogatory.

> RESPONSE:  Without waiving its objections, Plaintiff states the following for its response.

> Dr Bin Saif secured the funding for the formation of NorthStar UAE. Several of NorthStar's employees had worked for a previous company called Reflex Responses Management Consultancy, L.L.C. ("R2"). R2 had funding provided by the UAE government. After a decision was made to liquidate R2, the remaining funds in the R2 accounts were authorized to be transferred to NorthStar by the UAE government after consultation with Dr Bin Saif. The amount transferred was approximately $32,000,000. Alberto did not contribute any capital to NorthStar UAE. Dr. bin Saif did not personally contribute capital to form NorthStar UAE.

8.      State in detail and non-conclusory language the basis for your assertion that the bonuses paid to Mr. Alberto were excessive relative to the finances of the company, including the basis for your claim that Mr. Alberto was not entitled to them as alleged in Paragraph 48 of your Complaint and what amount of bonus to Mr. Alberto would not have been excessive in your view.

OBJECTION(S): NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. NorthStar also objects to the multi-part character of the interrogatory, which states at least two interrogatories in the guise of one.

RESPONSE: Without waiving its objections, Plaintiff states the following for its response

Defendant Alberto paid to himself $19,307,399 in bonuses over less than five (5) years. Defendant Alberto's salary, with allowances, already exceeded $1,000,000 per year. Defendant Alberto never sought approval from the Board of Directors for these bonuses and concealed them in the reports presented to the Board of Directors. For example, Defendant Alberto reported to Dr. bin Saif that the bonus payments made company-wide in November 2016 totaled $3,678,970, concealing the fact that he had distributed almost 75% of that amount to just three individuals: Defendant Alberto, Terry Key and Hillary Holcombe. Defendant Alberto's total compensation for 2016 accounted for approximately 66% of NorthStar USA's total income.

NorthStar USA did not make sufficient profits to justify that level of bonuses. For example, NorthStar USA's 2016 tax returns reflect a total income of just under $7,000,000, but a loss of $203,760.00, which resulted from the remarkably high compensation to Defendant Alberto (almost $5,000,000 in 2016) and other select employees. Defendant Alberto admitted that NorthStar was facing grave financial trouble in a December 31, 2016 letter in which he indicated that NorthStar UAE's accumulated losses exceeded one-half of its share capital. Hani Farag often heard Defendant Alberto state that NorthStar was in financial decline, even on occasions when NorthStar had just received large payments from the UAE Armed Forces. Dr. bin Saif ordered Defendant Alberto to decrease expenses, and instead, Defendant Alberto made significant bonus payments to himself.

Even if NorthStar could have afforded such bonuses, Defendant Alberto did not earn these bonuses. Defendant Alberto was not involved in the day to day business of NorthStar USA. Apart from Terry Key and Ali Nsarib, most NorthStar employees rarely interacted with or received guidance from Defendant Alberto.

Defendant Alberto did not have extensive experience in NorthStar's line of business. NorthStar had one main contract, referred to in the Amended Complaint as the UAE Contract, and one customer, the Joint Aviation Commission ("JAC") with the UAE Armed Forces. Defendant Alberto rarely made himself available to meet with NorthStar's sole customer at any level to provide support. For example, the senior leadership from JAC specifically requested a meeting with Defendant Alberto in the UAE. Defendant Alberto delayed several months to attend the meeting, which reduced his credibility and good standing with the customer. When the meeting finally occurred, Defendant Alberto mischaracterized the customer's

concerns, which resulted in a further erosion of the relationship between NorthStar and their only customer.

Furthermore, Defendant Alberto failed to secure any additional significant contracts for NorthStar during his time as CEO. Defendant Alberto directed NorthStar to invest hundreds of thousands of dollars in advertising displays at conventions. However, he rarely appeared at these conventions and, even with prodding, never directed any follow-up with potential customers to capitalize on these investments to secure additional contracts.

9. With respect to your allegation in Paragraph 26 of the Complaint that the March 19, 2014, revision of 2012 [*sic*] Employment Agreement (attached to the Complaint as Exhibit B) was not approved by NorthStar UAE's Board of Directors, state all facts and identify all documents you believe support that contention, including whether you contend that Mr. Alberto was required to get approval from NorthStar UAE's Board of Directors, and, if so, state in detail and non-conclusory language the basis for that contention.

OBJECTION(S): NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. NorthStar also objects to the multi-part character of the interrogatory, which states at least two interrogatories in the guise of one. Furthermore, the interrogatory's request for NorthStar to "identify all documents" is in the nature of a request for production of documents and is therefore improper as an interrogatory.

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

The Employment Agreement dated May 31, 2012, attached as Exhibit B to the Amended Complaint, speaks for itself. Under the 2012 Employment Agreement, Defendant Alberto was required to report to the Board of Directors of NorthStar UAE. Defendant Alberto was not permitted to take single-handed action on behalf of NorthStar USA without approval from the Board of Directors. See also the Employment Agreement dated March 19, 2014, attached as Exhibit D to the Amended Complaint, which speaks for itself.

10.     Did the Power of Attorney give Mr. Alberto the authority to amend NorthStar

USA's Limited Liability Company Agreement, and, if not, state all facts and identify all documents

to support your contention.

> OBJECTION(S):   NorthStar further objects that the Interrogatory improperly
> purports to instruct NorthStar on how it may respond to the Interrogatory.
> Furthermore, the Interrogatory seeks a legal conclusion rather than a factual answer
> and is improper on that basis, as well.  Additionally, the interrogatory's request for
> NorthStar to "identify all documents" is in the nature of a request for production of
> documents and is therefore improper as an interrogatory.  NorthStar objects as well
> that the Interrogatory seeks information in the possession of NorthStar USA, which
> is a separate party in this litigation to whom Alberto has served a separate set of
> interrogatories.

> RESPONSE: Without waiving its objections, Plaintiff states the following for its
> response.

> The Power of Attorney, attached as Exhibit C to the Amended Complaint, speaks
> for itself. The Power of Attorney granted Defendant Alberto certain powers as agent
> for NorthStar UAE.  The Power of Attorney never granted Defendant Alberto any
> power or authority to serve as agent for NorthStar USA.

11     State in detail and non-conclusory language all topics discussed at the NorthStar

UAE Board meeting held on October 17, 2017, including identifying the location of the meeting,

each attendee, and the reason for calling the meeting.

> OBJECTION(S):   NorthStar further objects that the Interrogatory improperly
> purports to instruct NorthStar on how it may respond to the Interrogatory.
> NorthStar also objects to the multi-part character of the interrogatory, which states
> at least four interrogatories in the guise of one.  Additionally, based upon the multi-
> part character of this and many of the preceding Interrogatories Alberto has
> exceeded the number of Interrogatories permitted under the Court's August 1, 2018
> Order [Dkt. 50].

> RESPONSE:  Without waiving its objections, Plaintiff states the following for its
> response.

> In a notice dated October 8, 2017, Dr. bin Saif informed Defendant Alberto that
> there would be a Board of Directors meeting on October 17, 2017, at 5 p.m., at the
> company headquarters.  The Notice set forth the topics to be discussed which
> included: 1) audited financial statements for the year 2016 and before; 2) decisions

made that were not in accordance with NorthStar UAE's Memorandum of Association; 3) bonus payments made to company executives; 4) amounts paid to the Chairman; 5) the company's financial position, including unaudited profit and loss statements and balance sheets up to September 30, 2017; 6) company strategy for the coming years; and 7) any other relevant matters. The auditors from Deloitte & Touche Incorporated who had audited NorthStar's finances were requested to attend. *See* NSA000138.

The meeting occurred on October 17, 2017, at 5 p.m., at the company headquarters. The attendees of the meeting included Defendant Alberto, Dr. bin Saif, and auditors from Deloitte & Touche Incorporated.

At the meeting, Dr. bin Saif tried to discuss the aforementioned topics, but received insufficient and unsatisfactory responses from Defendant Alberto. As a result, Dr. bin Saif lost confidence in Defendant Alberto and subsequently revoked Defendant Alberto's Power of Attorney.

12.     Specifically itemize all capital contributions or other monetary investments made to NorthStar UAE since its formation by any person, including but not limited to Dr. Ahmed.

OBJECTION(S): Additionally, NorthStar objects that this Interrogatory is neither relevant nor proportional to the needs of the case, as it does not relate to any claim or defense in the lawsuit. For this reason, too, the Interrogatory is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response. See Plaintiff's Response to Interrogatory No. 7.

13.     Describe in detail the facts known to you relating to any ITAR (International Traffic in Arms Regulation) export license held by NorthStar UAE at any time, including the circumstances under which NorthStar UAE obtained such license(s), any and all notifications or other communications between NorthStar UAE on one hand and the U.S. government on the other hand, regarding such license(s), the circumstances under which any license(s) were rescinded, the circumstances under which NorthStar UAE obtained any license after one or more licenses were

rescinded, whether NorthStar UAE currently holds any ITAR license and, if so, the identification of such license(s).

> OBJECTION(S): NorthStar also objects that this Interrogatory is neither relevant nor proportional to the needs of the case, as it does not relate to any claim or defense in the lawsuit. For this reason, too, the Interrogatory is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, NorthStar objects to the Interrogatory's multi-part character, as the Interrogatory states at least five interrogatories in the guise of one. Additionally, based upon the multi-part character of this and many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

> RESPONSE: Without waiving its objections, Plaintiff states the following for its response. NorthStar UAE does not have an ITAR license; its subsidiary, NorthStar USA, has an ITAR license.

14. State in detail and non-conclusory language the basis for your allegation in Paragraph 126 of the Complaint that Mr. Alberto, together with others, wrongfully laid off "well-paid and vital revenue-generating employees," including the names of such employees, when they were laid off, and how they were "vital revenue-generating employees," as well as all persons who you contend participated in these layoffs.

> OBJECTION(S): NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. NorthStar also objects to the multi-part character of the interrogatory, which states at least four interrogatories in the guise of one. Additionally, based upon the multi-part character of this and many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

> RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

> The following individuals were vital revenue-generating employees of NorthStar UAE and NorthStar USA who were laid off by Defendant Alberto in 2017 to enable Defendant Alberto to continue making improper bonuses to himself and to purge NorthStar of those individuals who questioned Defendant Alberto's handling of the company and his ability to make improper bonuses to himself and his co-conspirators (i.e., Hillary Holcombe, Terry Key, and Nrasib Ali). Seven of the

individuals named below were from the Operations Department, including Lyle Becka, James Jett, Geomar Manuel Catucod, Bernard R. Baker, Robert Adam Gunn, Stephen Champley, and Roy Fowler Grubb. These individuals accounted for almost half of the Operations Department.

- Hani Farag was the Senior Corporate Vice President of Human Resources of NorthStar UAE from 2012 until June 2017. In June of 2017, while employed by NorthStar, Mr. Farag was receiving a gross monthly salary of 109,332 AED (approximately $29,872.00), which included a basic salary of 70,150 AED, a housing allowance of 26,667 AED, a vehicle allowance of 5,500 AED, and a travel allowance of 7,015 AED. Mr. Farag was not laid off. However, Defendant Alberto forced Mr. Farag out after he confronted Defendant Alberto about the improper bonuses Defendant Alberto was granting himself and a select few employees (i.e., Terry Key, Hilary Holcombe, and Nrasib Ali). As part of his job duties, Mr. Farag was responsible for approving bonus recommendations made by Defendant Alberto to senior-level employees. Mr. Farag required Defendant Alberto to sign a document affirming that Defendant Alberto had obtained approval from NorthStar's Board of Directors to receive or make bonus payments. However, in or around November 2016, Defendant Alberto began to refuse to sign these statements and, at the same time, made multi-million-dollar bonus payments to himself from NorthStar.

- Lyle Becka served as Deputy Vice President in the Operations Department of NorthStar UAE from 2012 until September 2017. In June of 2017, while employed by NorthStar, Mr. Becka earned a gross monthly salary of 71,825 AED (approximately $19,624.00), which included a basic salary of 68,625 AED, and a vehicle allowance of 3,200 AED.

- Marwan Agha served as the Financial Controller in the Finance Department at NorthStar UAE from 2012 to August 2017. Mr. Agha was responsible for, *inter alia*, supervising the quality of accounting and financial reporting. In June of 2017, while employed by NorthStar, Mr. Agha received a gross monthly salary of 55,606 AED (approximately $15,193), which includes a basic salary of 35,228 AED, a housing allowance of 15,417 AED, a vehicle allowance of 3,200 AED, and a travel allowance of 1,761 AED. Mr. Agha witnessed Defendant Alberto's careless and inappropriate use of NorthStar's corporate credit card for personal expenses, including frequent withdrawals of funds from NorthStar's accounts, sometimes upwards of $5,000, during Defendant Alberto's travels. Defendant Alberto often failed to provide Mr. Agha with the requisite expense reports, or, when Defendant Alberto did submit an expense report, Mr. Agha noticed a lack of transparency for the claimed expenses. Mr. Agha raised his concerns about Defendant Alberto's handling of NorthStar's finances to Nrasib Ali. Defendant Alberto became frustrated with Mr. Agha's questioning of his expense reports and ordered Ali to handle them personally and did not allow Mr. Agha to question Alberto. Mr. Agha also raised concerns about the vulnerability of NorthStar USA's bank account due to Defendant Alberto's signature authority on NorthStar USA's account. Mr. Agha

requested that the NorthStar USA bank account balance be kept at a minimum due to Defendant Alberto's improper spending habits, which Mr. Agha viewed as a financial risk to NorthStar. Due to Mr. Agha's knowledge of and attempts to halt Defendant Alberto's wrongful conduct, Mr. Agha was terminated by Albert in 2017.

- James Jett served as Technical Services Director in the Operations Department of NorthStar UAE from 2012 until September 2017. In June of 2017, while employed by NorthStar, Mr. Jett received a gross annual salary of 82,776 AED (approximately $22,616), which included a basic salary of 54,900 AED, a housing allowance of 20,833 AED, a vehicle allowance of 3,200 AED, and a travel allowance of 3,843 AED.

- Geomar Manuel Catucod served as Tech Support Coordinator in the Operations Department of NorthStar UAE from 2012 to August 2017. In June of 2017, while employed by NorthStar, Mr. Catucod earned a gross monthly salary of 22,813 AED (approximately $6,233), which included a basic salary of 15,250 AED, a housing allowance of 5,000 AED, a vehicle allowance of 1,800 AED, and a travel allowance of 763 AED. Mr. Catucod was not terminated, but instead quit for another position to avoid being terminated.

- Bernard R. Baker served as Senior Design Engineer in the Operations Department of NorthStar UAE from 2015 to October 2017. In June of 2017, while employed by NorthStar, Mr. Baker earned a gross monthly salary of 59,070 AED (approximately $16,139), which included a basic salary of 44,225 AED, a housing allowance of 10,833 AED, a vehicle allowance of 1,800 AED, and a travel allowance of 2,211 AED.

- Robert Adam Gunn served as Senior Director of Technical Services for NorthStar UAE from 2012 to September 2017. In June of 2017, while employed by NorthStar, Mr. Gunn earned a gross monthly salary of 59,475 AED (approximately $16,250).

- Stephen Champley served as Manager of Technical Services in the Operations Department at NorthStar UAE from 2012 to September 2017. In June of 2017, while employed by NorthStar, Mr. Champley earned a gross monthly salary of 54,249 AED (approximately $14,822), which includes a basic salary of 40,031 AED, a housing allowance of 10,417 AED, a vehicle allowance of 1,800 AED, and a travel allowance of 2,002 AED.

- Roy Fowler Grubb served as the Avionics Technician in the Operations Department at NorthStar UAE from 2014 to August 2017. In June of 2017, while employed by NorthStar, Mr. Grubb earned a gross monthly salary of 42,640 AED (approximately $11,650), which includes a basic salary of 28,975 AED, a housing allowance of 10,417 AED, a vehicle allowance of 1,800 AED, and a travel allowance of 1,449 AED.

*See* NSA000723.

15.     With respect to the allegations in Paragraph 125 of the Complaint that Mr. Alberto, Terry Paul Key, and Hillary R. Holcombe conspired to ship NorthStar's equipment to United States [*sic*] for their own use, state in detail and non-conclusory language the basis for this allegation, including but not limited to how you learned of this, whether the equipment was, in fact, ever shipped to the USA, identify the specific equipment at issue, and your belief whether the shipping of the property to the United States served any business purpose for NorthStar UAE.

OBJECTION(S):   NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. NorthStar also objects to the multi-part character of the interrogatory, which states at least four interrogatories in the guise of one.  Additionally, based upon the multi-part character of this and many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

Beginning at least in September 2017, Terry Key and Defendant Alberto conspired to ship NorthStar's equipment from a hanger located in the UAE to Florida for their new company, Vulcan Aviation LLC.  With Defendant Alberto's authorization, Terry Key requested NorthStar employees to load NorthStar's equipment stored in a hanger located in the UAE into shipping containers for transfer. Upon information and belief, Terry Key misled NorthStar's employees into believing that the equipment was being shipped for use in a purported contract with Iraq that NorthStar had not yet obtained.  On or about October 9, 2017, Terry Key advised Defendant Alberto that: "The container to ship the tools back is now in the hangar for loading". Defendant Alberto responded that this was "excellent." *See* NSA000713-722.

On or about October 21, 2017, Terry Key falsely informed several NorthStar employees, Greg Huber, Stefan Orlygsson, Robert Howard, and Richard Liddle, that Dr. bin Saif was in a bad financial situation and that his aviation certificate had been suspended. In that same email, Terry Key informed these individuals that he and Defendant Alberto were forming a new company that these employees would be invited to join and that this new company would misappropriate an Iraq contract that NorthStar had been pursuing. *See* NSA0000693-695. In that same email chain, Greg Huber informed Terry Key that the shipping container was loaded and

included a photograph. *See* NSA-0000696. Upon information and belief, Defendant Alberto, Terry Key and Hillary Holcombe sped up their plan to transfer NorthStar's equipment for Vulcan Aviation, LLC's use after the October 17, 2017 Board of Directors meeting and the Revocation of Defendant Alberto's Power of Attorney. However, before the equipment could be shipped, Dr. Bin Saif halted the shipment.

16. Describe in detail and non-conclusory language all communications between NorthStar UAE on the one hand and the UAEAF and its representatives on the other hand, regarding Mr. Alberto and/or Vulcan since the revocation of Mr. Alberto's Power of Attorney on or about October 19, 2017.

OBJECTION(S): NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

On October 25, 2017, despite lacking the authority to do so, Defendant Alberto sent a letter to General Toumajan of the Joint Aviation Command ("JAC"), UAE Armed Forces as CEO of NorthStar on NorthStar letterhead in an attempt to interfere with the JAC's relationship with NorthStar. In his October 25 letter, Defendant Alberto falsely stated that Dr. bin Saif was having "major financial issues" with his company Rotana Jet, and that Dr. bin Saif's civil aviation license had been suspended by the GCAA. Defendant Alberto also stated in his letter that his Power of Attorney had been revoked. Defendant Alberto misrepresented to General Toumajan that NorthStar USA's Technical Assistance Agreement TA-3671-12 would cease on October 25, 2017, and Defendant Alberto specifically recommended that JAC cease all payments to NorthStar pursuant to the UAE Contract. *See* NSA000448.

On October 29, 2017, in an attempt to rectify the damage wrought by Defendant Alberto's October 25 letter, Dr. Bin Saif wrote to General Toumajan to inform him of the deceitful and irrelevant nature of Defendant Alberto's letter. Dr. bin Saif informed General Toumajan that a Board of Directors meeting had been held in the presence of Deloitte auditors to review financial information requested from Defendant Alberto. However, Defendant Alberto had failed to provide sufficient information relating to NorthStar's finances. Dr. bin Saif reassured the client that NorthStar still intended to perform on the contract. Dr. bin Saif listed as the new points of contact the following individuals: Lyle Becka, as Vice President of

Operations, Stefan Orlygsson, as Production Manager, and Salem Khaled AlDhaheri, as Senior Vice President of Corporate. *See* NSA000449.

17.     Describe in detail and non-conclusory language all communications between NorthStar UAE on the one hand and the U.S. State Department and its representatives on the other hand, regarding NorthStar USA's and/or NorthStar UAE's ITAR license since revocation of Mr. Alberto's Power of Attorney on or about October 19, 2017.

> OBJECTION(S):  NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. NorthStar objects as well that the Interrogatory seeks information in the possession of NorthStar USA, which is a separate party in this litigation to whom Alberto has served a separate set of interrogatories.  NorthStar also objects to the multi-part character of the interrogatory, which states at least four interrogatories in the guise of one.  Additionally, based upon the multi-part character of this and many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

> RESPONSE:  Without waiving its objections, Plaintiff states the following for its response.

> NorthStar UAE did not communicate with the Department of State because it did not have an ITAR license.  NorthStar USA had an ITAR license.

18.     Specifically itemize and describe all opportunities and customers associated with such business relationships that you claim to have lost as a result of Defendants' alleged conduct as alleged in Paragraph 118 of your Complaint, and include in your response the stated reason(s) for such lost opportunity or relationship (if any), the date such opportunity or relationship was lost or sabotaged, and the specific monetary amount you would have realized if the opportunity or relationship had not been lost.

> OBJECTION(S):  NorthStar further objects that this Interrogatory is neither relevant to any claim or defense in this lawsuit nor proportional to the needs of the case, as it relates solely to a cause of action which the Court has now dismissed. NorthStar also objects to the multi-part character of the interrogatory, which states at least three interrogatories in the guise of one.  Additionally, based upon the multi-

part character of this and many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

NorthStar had a contract opportunity with Iraq to sell 407MRH aircraft to the Iraqi government. Upon information and belief, Defendant Alberto intended, and made plans, to have his new company, Vulcan Aviation LLC, take over and perform on this contract after the October 17, 2018 Board of Directors meeting in Abu Dhabi with Dr. bin Saif. On or about October 21, 2017, Terry Key informed several NorthStar employees that he and Defendant Alberto were forming a new company that they would be invited to join, which would take the Iraqi Military contract that NorthStar was pursuing. *See* NSA0000692-696. In addition, Defendant Alberto and Terry Key conspired to send a letter to Bell Helicopter to inform them that they had established Vulcan Aviation LLC and that all of the personnel and assets from NorthStar USA would be rebranded to Vulcan Aviation LLC. Terry Key reported in an email dated October 24, 2017, that Vulcan Aviation LLC would approach the Iraqi Military with this change, acting with the intent of interfering with and misappropriating NorthStar USA's expected contract. *See* Vulcan0041. Defendant Alberto also directed Terry Key to compile a list of NorthStar vendors. Upon information and belief, this was done to allow Defendant Alberto to send NorthStar's vendors notice of the "rebranding" of NorthStar USA to Vulcan Aviation LLC.

Defendant Alberto also used promotional and advertising material from NorthStar, including photographs of *NorthStar's* helicopters to advertise for Vulcan Aviation LLC. Hillary Holcombe, with Defendant Alberto's authorization, repurposed NorthStar's images for Vulcan Aviation LLC. Defendant Alberto also used funds from NorthStar USA to pay for Vulcan Aviation LLC expenses, including advertising expenses.

Additionally, NorthStar was pursuing a contract with Kuwait through Hichem Bendida. Defendant Alberto and Terry Key attempted to interfere in NorthStar's receipt of the Kuwait contract to misappropriate it for their new company, Vulcan Aviation LLC. Defendant Alberto and Terry Key communicated with Hichem Bendida in November 2017 regarding the Kuwait contract. In one November 14, 2017 email, Terry Key specifically tells Mr. Bendida to keep quiet about the Kuwait contract with Bell Helicopters. *See* Vulcan0036.

19.    Specifically itemize all damages you are seeking in this lawsuit and the methodology you use to calculate such damages, including all lost business, prospective business, and any other damages you seek.

OBJECTION(S): NorthStar objects as well that this Interrogatory seeks information subject to the mandatory disclosure provisions of Rule 26(a)(1) of the Federal Rules of Civil Procedure, and that the Interrogatory is therefore unnecessary and duplicative. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

NorthStar seeks compensation from Defendant Alberto in the amount of at least $23,874,698.95 for the damages NorthStar suffered due to Defendant Alberto's breaches of fiduciary duty, conversion, defamation and unjust enrichment at NorthStar's expense. NorthStar further seeks pre and post-judgment interest. This includes the bonuses paid to Defendant Alberto, Terry Key, and Nrasib Ali as set forth in the answer to Interrogatory No. 5, as well as bonus payments to Hillary Holcombe in the total amount of $220,000, which includes $20,000 on November 27, 2016; $100,000 on June 29, 2017; and $100,000 on October 4, 2017. NorthStar further seeks compensation for the more than $664,000.00 Defendant Alberto transferred or withdrew from NorthStar USA's bank accounts following his termination.

20.    State in detail and non-conclusory language all acts undertaken by NorthStar UAE

to mitigate any alleged damages you claim was [*sic*] caused by the conduct alleged in the

Complaint.

OBJECTION(S):   NorthStar further objects that the Interrogatory improperly purports to instruct NorthStar on how it may respond to the Interrogatory. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

In the summer of 2017, Dr. bin Saif began to closely scrutinize NorthStar's finances and ordered Defendant Alberto to decrease expenses. However, Defendant Alberto continued to make improper bonus payments to himself, Terry Key, Hillary Holcombe, and Nrasib Ali, contrary to Dr. bin Saif's orders. Defendant Alberto had been concealing his improper and unauthorized bonus payments for several years.

However, on October 8, 2017, Dr. bin Saif sent a Notice of a meeting of the Board of Directors to discuss NorthStar's finances for the 2016 calendar year, including bonus payments, and its projections moving forward. Dr. bin Saif also requested that Defendant Alberto and Nrasib Ali provide documentation and information regarding NorthStar's cash availability, and a breakdown of bonuses paid to Executive Management. Yet, at the October 17, 2017 board meeting, Defendant Alberto refused to fully and candidly address Dr. bin Saif's concerns about NorthStar's finances. As a result, Dr. bin Saif revoked Defendant Alberto's Power of Attorney almost immediately on October 19, 2017. A copy of the Revocation of Power of Attorney was provided to NorthStar's bank in the UAE and the U.S. State Department to inform them that Defendant Alberto no longer had any power to make decisions for, or handle the finances of, NorthStar. Dr. bin Saif also wrote to Deloitte & Touche (M.E.) on October 18, 2017, to confirm changes that would be made to the audit reports for NorthStar in order to allow more transparency and oversight, particularly of bonus payments. *See* NSA000413.

Dr. bin Saif appointed Lyle Becka as Vice President of Operations to take over from Defendant Alberto. Dr. bin Saif requested that Defendant Alberto assist in a "seamless transition" of duties and responsibilities to Lyle Becka. *See* NSA000002. On October 31, 2017, Dr. bin Saif sent a letter to confirm that Lyle Becka had been appointed as the Vice President of Operations for NorthStar USA and NorthStar UAE, and that Defendant Alberto and Terry Key are no longer authorized to represent NorthStar. *See* NSA000001.

21.     Identify all non-attorneys who participated in the decision to file this litigation.

OBJECTION(S):  NorthStar also objects that the Interrogatory seeks information protected from disclosure under principles of work-product protection and/or joint interest. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50]. NorthStar further objects to this Interrogatory because the parties to this litigation are clearly defined and the decision-making process to file suit is neither relevant to the claims or defenses nor likely to lead to the discovery of admissible evidence.


22.     Identify any individual(s) that you have consulted or expect to call as a fact or expert witness at trial of this matter. For each such witness, provide the person's name, company, address and profession or occupation, the subject matter or area on which each witness is expected to testify, the substance of the facts and opinions to which each witness testify and a summary of the grounds for each.

OBJECTION(S): NorthStar objects as well that this Interrogatory seeks information subject to the mandatory disclosure provisions of Rule 26(a)(1) and Rule 26(a)(2) of the Federal Rules of Civil Procedure, and that the Interrogatory is therefore unnecessary, duplicative, and/or premature. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response. NorthStar UAE will disclose its experts and their opinions in accordance with the time table set forth in the Joint Discovery Order entered in this case.

23. Identify each and every person who provided information or otherwise assisted with your answers to these interrogatories, including each person's title, phone number, address, and a description of the substance of the input and/or assistance provided by each such person.

OBJECTION(S): NorthStar further objects that this Interrogatory seeks information protected from disclosure under principles of attorney-client privilege and/or work product protection. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50].

RESPONSE: Without waiving its objections, Plaintiff states the following for its response.

The answers to these Interrogatories were obtained through reference to NorthStar's documents and documents produced by Defendant Alberto and non-parties. NorthStar employees and representatives were consulted to obtain the facts set forth herein.

24. Identify each and every non-privileged communication with any third party regarding the allegations in the Complaint, including the date of such communication and reason for such communication.

OBJECTION(S): NorthStar further objects that this Interrogatory seeks information protected from disclosure under principles of attorney-client privilege and/or work product protection. Additionally, based upon the multi-part character of many of the preceding Interrogatories Alberto has exceeded the number of Interrogatories permitted under the Court's August 1, 2018 Order [Dkt. 50]. NorthStar objects to this Interrogatory as overly broad due to the lack of any reasonable subject matter limitation or temporal limitation.

<u>RESPONSE:</u>  Without waiving its objections, Plaintiff states the following for its response.

This request is impossible to answer because the number of third-party communications "regarding the allegations in the Complaint" span over a five-year period. However, please generally see the email and letter correspondence reflecting communications by NorthStar UAE employees or representatives produced in response to Defendant's Requests for Production to NorthStar UAE. Please also see the responses to these Interrogatories regarding communications with representatives of the Department of State, the UAE Armed Forces, and the Joint Aviation Commission. Lyle Becka and Dr. bin Saif communicated with vendors, employees, and customers regarding Defendant Alberto's resignation to inform them that Defendant Alberto had resigned, and that Lyle Becka would be taking over his duties.  These communications occurred in the days and weeks following Defendant Alberto's resignation on October 25, 2017. The Revocation of Power of Attorney was provided to NorthStar's bank in the UAE to remove Defendant Alberto's ability to manage NorthStar UAE's finances.

Respectfully Submitted,

NORTHSTAR AVIATION L.L.C.,

By: DUNLAP BENNETT & LUDWIG PLLC


       /s/ Sarah C. Aviles
Of Counsel

Thomas M. Dunlap (VSB No. 44016)
Ellis L. Bennett (VSB No. 71685)
Ben S. Barlow (VSB No. 67933)
Eric L. Olavson (VSB No. 87872)
DUNLAP BENNETT & LUDWIG PLLC
211 Church Street SE
Leesburg, Virginia 20175
(703) 777-7319
(703) 777-3656 (facsimile)
tdunlap@dbllawyers.com
ebennett@dbllawyers.com
bbarlow@dbllawyers.com
eolavson@dbllawyers.com

Noah Fontanez, Esquire, Pro Hac Vice
DUNLAP BENNETT & LUDWIG PLLC
616 South Boston Avenue, Suite 60
Tulsa, Oklahoma 74119
(918) 505-7851
(918) 505-7851 (facsimile)
nfontanez@dbllawyers.com

Kevin T. Streit (VSB No. 45024)
Stephanie Martinez (VSB No. 87791)
DUNLAP BENNETT & LUDWIG PLLC
8003 Franklin Farms Drive, Suite 220
Richmond, Virginia 23229
(804) 823-7776
(804) 977-2680 (facsimile)
kstreit@dbllawyers.com
smartinez@dbllawyers.com

Sarah C. Aviles (VSB No. 86031)
DUNLAP BENNETT & LUDWIG PLLC
8300 Boone Boulevard, Suite 550
Vienna, Virginia 22182
(703) 777-7319
(703) 777-3656 (facsimile)
saviles@dbllawyers.com

*Counsel for the Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2018, a true copy of the foregoing was transmitted via electronic mail to:

> Clyde E. Findley, Esq.
> Nicholas R. Johnson, Esq.
> Ryen Rasmus, Esq.
> Samantha Bernstein, Esq.
> Berenzweig Leonard LLP
> 8300 Greensboro Drive, Suite 1250
> McLean, Virginia 22102
> njohnson@berenzweiglaw.com
> dleonard@berenzweiglaw.com
> cfindley@berenzweiglaw.com
> rrasmus@berenzweiglaw.com
> sbernstein@berenzweiglaw.com
> *Counsel for defendant Alden Burt Alberto*

/s/ Sarah C. Aviles
Sarah C. Aviles (VSB No. 86031)
DUNLAP BENNETT & LUDWIG PLLC
8300 Boone Boulevard, Suite 550
Vienna, Virginia 22182
(703) 777-7319
(703) 777-3656 (facsimile)
saviles@dbllawyers.com
*Counsel the Plaintiffs*

## VERIFICATION OF ANSWERS TO INTERROGATORIES

I, the undersigned, hereby certify under penalty of perjury that the objections and responses to the First Set of Interrogatories to NorthStar Aviation L.L.C. are true and correct to the best of my knowledge and belief.

Executed on this 19th day of September, 2018.

NORTHSTAR AVIATION L.L.C.

By: _____

Title: _Vice President_

Name: _Lyle Becka_