Exhibit 20

```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF VIRGINIA
 2                 ALEXANDRIA DIVISION

 3              CASE NO.:  1:18-CV-191

 4


 5   Northstar Aviation, LLC, ET AL.,

 6         Plaintiffs,

 7   vs.

 8   ALDEN BURT ALBERTO, ET AL.,

 9         Defendants.
     _____/
10

11              DEPOSITION OF AMY STYERS
                  PAGES 1 through 184
12

13            Monday, October 22, 2018
               9:28 a.m. to 4:19 p.m.
14
              U.S. Legal Support - Melbourne
15                  100 Rialto Place
                      Suite 739
16              Melbourne, Florida 32901

17

18

19

20

21

22

23

24         Stenographically Reported By:
               Vanese Killingbeck
25             Professional Reporter
```

1      Q.   You can still answer.

2      A.   I do.

3      Q.   Did the subject matter relate to ITAR

4  provisions?

5           MR. FONTANEZ:  Object.  Attorney/client

6      privilege.  You don't have to answer that question.

7  BY MR. FINDLEY:

8      Q.   Did -- in that phone call, did anyone at

9  Akin Gump give Northstar legal advice?

10          MR. FONTANEZ:  Same objection.

11          MR. FINDLEY:  That's an instruction not to

12     answer?

13          MR. FONTANEZ:  Yes.

14          MR. FINDLEY:  I'm just asking what I can

15     learn on a privilege log that -- was there legal

16     advice given?

17          MR. FONTANEZ:  You can -- you can answer.  I

18     take that back.  You can answer that question.

19     A.   I believe there was legal advice given.

20 BY MR. FINDLEY:

21     Q.   Did Northstar follow that legal advice?

22          MR. FONTANEZ:  Objection.

23          MR. FINDLEY:  But she can still answer,

24     right?

25          MR. FONTANEZ:  Yes.

1  A.   I don't -- I don't recall.
2  BY MR. FINDLEY:
3  Q.   Do you recall whether Northstar rejected that
4  legal advice?
5       MR. FONTANEZ:  Objection.  You don't have to
6  answer that question.
7       MR. FINDLEY:  You can -- but that's not an
8  instruction not to answer, right?
9       MR. FONTANEZ:  Yes, it is.
10      MR. FINDLEY:  I'm just clarifying whether
11 they followed or not.
12      MR. FONTANEZ:  Right.
13      MR. FINDLEY:  So I'm just kind of -- just
14 trying to make --
15      MR. FONTANEZ:  We're given -- in the context,
16 we're given parameters of the legal advice based on
17 whether it was followed, whether it was not
18 followed.  You know, those -- they can be deduced
19 as to what the legal advice was based on the --
20 based on your questions.
21      MR. FINDLEY:  But that's not the same as
22 violating attorney/client privilege.  I'm just
23 asking what they did after the call.
24      MR. FONTANEZ:  Do --
25      MR. FINDLEY:  And she already said she

1    Q.   Now, in the next paragraph, it -- I think
2    you're offering your options now, right?
3    A.   Correct.
4    Q.   And it says, I just wanted to let you know
5    there is another option on this, if your name is removed,
6    we can notify DDTC that there was a material change in
7    registration (which includes changes in senior officers),
8    and add someone else whomever that might be.  The
9    registration stays intact, however, the senior officer
10   name changes.  I'm just throwing out options.
11        This is -- the letter you're referring to in
12   this -- or I'm sorry, that you attached is also an
13   option, right?  All of these were different options that
14   Reno could have taken; is that correct, and you're just
15   adding some other ones?
16   A.   Well, at this point Reno is asking the
17   state -- had asked me to draft a letter to the state
18   department invalidating the registration of
19   Northstar Aviation, which would effectively mean that the
20   company no longer has -- doesn't exist as far as the
21   state department is concerned.  It can't export.  It
22   can't provide any defense services or anything to its
23   customer.  So the material change in registration, which
24   is another option through the state department, you can
25   notify them within five days of a change in senior

1  officer, and that removed -- that would have removed
2  Reno's name and kept everything with Northstar Aviation
3  in tact including licenses, the TAA and someone else's
4  name would have been placed and he would have not been
5  responsible for any activity under the TAA.
6       Q.   What I'm asking, though, is that -- was the
7  option that is reflected in the letter that's attached to
8  your e-mail, Alberto -- bates No. Alberto_00880, is that
9  option wrong?  Is there anything in that letter that you
10 think is -- is wrong or is it just another option?
11      A.   Well, in my opinion, it's wrong because when
12 you do this, you take -- you put everybody out of a job,
13 and you take away everything that the state department
14 has authorized Northstar Aviation to do, it can no longer
15 do.  So there would no longer -- you can't export.  You
16 can't do anything under the ITAR when you ask to
17 invalidate a registration number.  You don't exist.
18      Q.   At the time that this letter was prepared, is
19 it -- was it -- strike that.
20           Was Reno necessary for Northstar USA to have
21 an ITAR license?
22      A.   Reno himself?
23      Q.   Yeah.
24      A.   No.
25      Q.   Was that clear to him at the time you were

1    Q.   That second sentence in that paragraph, do
2    you see anything wrong with that statement?
3    A.   Yes, because Northstar was still in business.
4    Q.   Do you see anything wrong with that from an
5    ITAR perspective?
6    A.   I've never been in this situation before, so
7    I can't speak one way or another.
8    Q.   So it's a reasonable -- it could be a --
9    could have been a reasonable business decision to decide
10   not to be in the business of manufacturing, exporting, or
11   brokering defense articles or defense services?
12   A.   I'm sure companies do it every day.
13   Q.   The next sentence says, Northstar Aviation
14   USA, LLC, also requests that DDTC invalidate current
15   licenses held under registration M30941.
16        Is there anything wrong with that statement?
17   A.   I've never been in this situation before, so
18   I can't -- I'm guessing companies do it all the time.
19   Q.   Doing these things, meaning asking for DDTC
20   registration numbers to be expired and that current
21   licenses be invalidated, that's a business decision,
22   right?
23   A.   It would have to be.
24   Q.   The first sentence in the second paragraph
25   says, My power of attorney as chief executive officer of

1 contingency?  I mean, wasn't the expectation on the part
2 of Northstar employees at that time that if a new company
3 was formed that they would become employees of the new
4 company?
5          MR. FONTANEZ:  Objection.
6 BY MR. FINDLEY:
7     Q.   You can answer that.
8     A.   I can't speculate what my co-workers thought.
9     Q.   Did Reno ever tell you that he was going to
10 take him with you to Vulcan?
11     A.   He did.
12     Q.   So isn't that the new company that would
13 replace Northstar when Northstar was shut down?
14          MR. FONTANEZ:  Objection.
15 BY MR. FINDLEY:
16     Q.   You can answer that.
17     A.   That was me.  I couldn't speak to what was
18 happening with the rest of my co-workers.  Like I said, I
19 can't speculate what they were thinking.  And I never
20 said I was going to his new company.
21     Q.   No.  But you had the opportunity to -- at
22 least Reno was telling you that if this new company,
23 Vulcan, was formed, you would have an opportunity to go
24 to that company, right?
25     A.   If I wanted to.

CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF ORANGE

     I, Vanese Killingbeck, Professional Reporter, Notary Public, State of Florida, certify that AMY STYERS personally appeared before me on the 22nd day of October 2018 and was duly sworn.

     Signed this 29th day of October 2018.

*Vanese Killingbeck*
_____
Vanese Killingbeck
Notary Public, State Of Florida
Commission No: FF 187770
Commission Expires: January 13, 2019

```
1                CERTIFICATE OF REPORTER

2    STATE OF FLORIDA
     COUNTY OF ORANGE
3

4             I, Vanese Killingbeck, Professional Reporter

5    and Notary Public, certify that I was authorized to and

6    did stenographically report the deposition of

7    AMY STYERS, pages 1 through 180; that a review of the

8    transcript was requested; and that the transcript is a

9    true record of my stenographic notes.

10            I further certify that I am not a relative,

11   employee, attorney, or counsel of any of the parties, nor

12   am I a relative or employee of any of the parties'

13   attorneys or counsel connected with the action, nor am I

14   financially interested in the action.

15

16            Dated this 29th day of October 2018.
```

*Vanese Killingbeck*
_____
Vanese Killingbeck
Professional Court Reporter